IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY WAX,<br><br>                **Plaintiff,**<br><br>v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>                **Defendants.** | No. 2:25-cv-00269-TJS |

**REPORT OF RULE 26(f) MEETING**

In accordance with Federal Rule of Civil Procedure 26(f) and the January 30, 2025 Order of this Court, counsel for the Parties conferred on March 10, 2025, and submit the following Report of their meeting for the Court's consideration.

**1. Discussion of Claims, Defenses, and Relevant Issues**

**Plaintiff's Summary**

Plaintiff's Factual Background:

Plaintiff Amy Wax is a tenured professor at the University of Pennsylvania's Carey School of Law, where she has worked since 2001. Professor Wax frequently discusses cultural issues related to academia and higher education, particularly regarding affirmative action and race-based admissions practices. Since 2017, some students and faculty members have called for Professor Wax's termination. On March 2, 2022, then-Dean Theodore W. Ruger filed formal disciplinary charges against Professor Wax for her public statements. The charges classified Professor Wax's statements as "major infractions," which meant the charges would be adjudicated by an ad hoc Faculty Senate Hearing Board, as opposed to the Senate Standing Committee on Academic Freedom and Responsibility that adjudicates academic misconduct

1

charges. The Hearing Board issued its report on June 21, 2023, which recommended that Professor Wax be sanctioned with (1) a one-year suspension at half pay, (2) the loss of her named chair position, (3) the loss of summer pay in perpetuity, and (4) a public reprimand. Then-President Liz Magill agreed with the Hearing Board's findings and recommendations on August 11, 2023, after which Professor Wax appealed the decision to the Faculty Senate Committee on Academic Freedom and Responsibility. The Committee upheld the decision on May 29, 2024, and began to institute the sanctions against Professor Wax after settlement negotiations between the University's Office of General Counsel and Professor Wax's counsel were unsuccessful. The sanctions were published on the University's website September 24, 2024.

Professor Wax's complaint alleges that the disciplinary procedures suffered from defects in violation of her contractual employment agreement with the University. It is also Professor Wax's position that the University engaged in a double standard regarding its speech policy, punishing or permitting speech based on the racial identity of both the speaker and the subject of the speech itself, violating not only her tenure protections but civil rights laws. Accordingly, Professor Wax filed this suit for breach of contract, unlawful discrimination, and other related causes of action.

Plaintiff's Likely Discovery: Plaintiff intends to seek discovery in the form of interrogatories, requests for discovery, and written admissions concerning the nature of the proceedings against her, specifically whether they were conducted in good faith, consistent with the University's procedures, or whether they placed in her in a false light. For example,

- Emails, texts, and communications by those involved in the disciplinary process regarding Professor Wax, including, but not limited to, the motivations or reasoning

behind certain procedural decisions made by agents of the University during the process that Professor Wax alleged in the Complaint to be in bad faith or without due process.

- The truth or falsity of Professor Wax's allegations claimed to be false by Dean Ruger in his charging document, and as restated by others in the process. These include aggregate data about student performance at the University that the University has not yet disclosed to Plaintiff.

- Emails, texts, and communications by certain individuals, especially Dean Ruger, who publicly stated that "it sucks" that the University employs Plaintiff, regarding his and others' desire to harm the professional reputation of Plaintiff and place her in a false light.

<u>Plaintiff's Likely Motions:</u> As noted in the Complaint, Professor Wax intends to file a motion for preliminary injunction to stop Defendants from enacting the sanctions against Professor Wax during the pendency of the lawsuit. The Parties have engaged and continue to engage in discussions on the Motion in an effort to come to an agreement.

**Defendants' Summary**

<u>Factual Background:</u>

Plaintiff, a tenured Professor of Law at the University of Pennsylvania Carey Law School ("Penn Law"), has, for numerous years, made offensive, unprofessional comments in the media and the classroom targeting minority groups, women, immigrants and individuals in the LGBTQ+ community. She has also disclosed, in a public and degrading fashion, confidential information on student performance. After years of complaints from students, faculty members and alumni, in June 2022, the Dean of Penn Law charged Plaintiff with a major infraction for her

disregard of the University of Pennsylvania ("The University") and Penn Law's standards, rules, and mission.

Over the next two years, Defendant ensured that the complaint against Plaintiff was evaluated in a fair, neutral manner that adhered to the procedures set forth in its Faculty Handbook. This included the Chair of the University-wide Faculty Senate convening a panel of neutral faculty (the "Hearing Board") to preside over a formal, three-day hearing during which Plaintiff was able to present evidence and testimony. After considering the evidence presented at that hearing, the Hearing Board found that Plaintiff had been derelict in her scholarly and teaching responsibilities, had violated the University's privacy policies, and had, on numerous occasions, "flagrantly" violated the University's norms to treat all students equitably and with respect. The Hearing Board recommended sanctions, including a one-year suspension at half pay (but with full benefits) to begin in July 2025.

The University President then reviewed the Hearing Board's report, found no reason to depart from its findings, and accepted the Hearing Board's recommended sanctions. Plaintiff appealed her case to the University-wide Senate Committee on Academic Freedom and Responsibility, which sustained the Hearing Board's decision.

Plaintiff filed this lawsuit asserting claims for discrimination based on race and disability, breach of contract, and false light invasion of privacy. The claims have no legal or factual merit. Plaintiff's breach of contract claim fails, as she has identified no valid contractual obligation that was breached. Her racial discrimination claims fail as there is no basis for protection of hateful speech based on the subject of race, and because she has offered no support that she was the victim of discrimination based on her own race. Her disability discrimination claim similarly fails both because it is untimely and because participating in a disciplinary hearing is not an

4

"essential function" of her work as a law professor. Finally, her false light claim fails because the challenged publication was privileged, and also because it fairly and accurately described the disciplinary proceedings and their results.

Defendant's Likely Discovery: Defendant intends to serve written discovery requests in the form of interrogatories, requests for production, and requests for admissions. Defendant also intends to take depositions of Plaintiff and witnesses identified by her. Discovery will address: the factual basis for the breach of contract claim; any evidence cited by Plaintiff to support her discrimination claims; harm allegedly suffered by Plaintiff as a result of the internal proceedings or the imposition of the sanction; Plaintiff's communications with third parties and use of social media relating to her public statements and other matters at issue in this case; and Plaintiff's request for an accommodation during the internal disciplinary proceedings.

Defendant's Likely Motions: Defendant intends to file a motion to dismiss the complaint in accordance with Federal Rule of Civil Procedure 12(b)(6). Defendant also expects to file a summary judgment motion upon the conclusion of discovery as to any claims that are not dismissed at the outset of the case.

## 2. Informal Disclosures

The Parties have already disclosed the information listed in Rule 26(a)(1). At the meeting, the Parties agreed to provide informal, good-faith updates on these disclosures in the event that new information comes to the Parties' attention.

## 3. Formal Discovery

The Parties agreed to proceed with formal written discovery while Defendants' forthcoming Motion to Dismiss is pending before the Court. During that time, the Parties reserve

the right to object to any unduly broad or burdensome requests, and the Parties agreed to engage in ongoing good-faith discussions to avoid undue burden and maximize efficiency. The Parties agreed to wait to take depositions until after the Court rules on the Motion to Dismiss. Discovery will not otherwise be conducted in phases.

The Parties propose a fact discovery deadline of one hundred and twenty (120) days after the Court's ruling on Defendants' Motion to Dismiss.

The Parties also discussed procedures for document production. The Parties agreed to exchange lists of the most likely custodians of relevant materials, including a brief description of each person's title and responsibilities. The Parties will also exchange lists of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system, as well as other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility and would require substantial costs to retrieve.

**4. Electronic Discovery**

The Parties discussed their anticipated e-discovery and agreed to designate retention coordinators and e-discovery liaisons. The Parties agreed to begin working on a retention agreement over the coming weeks, in which the Parties will agree to segregate and preserve the integrity of all e-documents; ensure that e-mail of identified custodians shall not be deleted in the ordinary course of business; ensure that e-documents maintain by individual custodians shall not be altered; and provide notice regarding the criteria for filtering e-mails and attachments for spam and/or viruses. The Parties' retention coordinators will be responsible for implementing these procedures within seven (7) days of identifying the relevant document custodians.

**5. Expert Witness Disclosures**

The Parties propose to exchange expert witness disclosures and reports for affirmative expert witnesses within thirty (30) days after the close of fact discovery. In the event that either party requires rebuttal expert witnesses, the Parties agreed to exchange those disclosures and reports within forty-five (45) days after the affirmative expert witness deadline. Depositions of expert witnesses will be completed within sixty (60) days from the time the Parties produce expert witness reports.

**6. Early Settlement or Resolution**

The Parties are familiar with Local Rule 53.3 and are willing to engage in ADR in the interests of an early resolution, but the Parties find it difficult at this time to be optimistic about the prospects of ADR based on previous discussions in which the Parties were unable to resolve their differences.

**7. Summary Judgment Motions and Trial Date**

The Parties propose that any summary judgment motions would be filed within thirty (30) days after the conclusion of expert witness discovery. The Parties further propose that the trial should not commence until at leastn thirty (30) days after disposition of the motions. The Parties thus expect that a reasonable trial date will be approximately mid-April of 2026.

**8. Other Matters**

The Parties limited their discussion to the matters listed above.

Dated: March 12, 2025

*/s/ Caleb Acker*
Caleb Acker                                         Samantha K. Harris
PA Bar No. 330399                                   PA Bar No. 90268
HOLTZMAN VOGEL BARAN                                ALLEN HARRIS PLLC
TORCHINSKY & JOSEFIAK PLLC                          P.O. Box 673
15405 John Marshall Hwy                             Narberth, PA 19072

| | |
|---|---|
| Haymarket, VA 20169 | (610) 634-8258 |
| cacker@holtzmanvogel.com | sharris@allenharrislaw.com |
| 540-341-8808 | |
| | |
| Jason B. Torchinsky* | Susan Greene* |
| D.C. Bar No. 976033 | NY Bar No. 4687349 |
| HOLTZMAN VOGEL BARAN | HOLTZMAN VOGEL BARAN |
| TORCHINSKY & JOSEFIAK PLLC | TORCHINSKY & JOSEFIAK PLLC |
| 2300 N Street NW, Suite 643 | 5360 Genesee Street, Suite 203 |
| Washington, D.C. 20037 | Buffalo, NY 14026 |
| jtorchinsky@holtzmanvogel.com | sgreene@holtzmanvogel.com |
| Phone: (202) 737-8808 | Phone: (716) 647-6103 |

*Attorneys for Plaintiff*
*\* admitted pro hac vice*


*/s/ Michael L. Banks*
MORGAN, LEWIS & BOCKIUS LLP
Michael L Banks (PA ID No. 93750)
A. Klair Fitzpatrick (PA ID No. 309329)
Arielle H. Steinhart (PA ID No. 331886)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
Telephone: 215.963.5000
Fax: 215.963.5001
Email: michael.banks@morganlewis.com
klair.fitzpatrick@morganlewis.com
arielle.steinhart@morganlewis.com


TUCKER LAW GROUP
Joe H. Tucker, Jr.
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: 215-875-0609
Fax: 215-559-6209
Email: jtucker@tlgattorneys.com

*Attorneys for Defendants*
*University of Pennsylvania and Board of Trustees of the University of Pennsylvania*