**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                              :
Amy Wax,                                      :
                                              :
                    Plaintiff,                :
                                              :       Civ. No. 2:25-cv-00269-TJS
            v.                                :
                                              :
The Trustees of the University of Pennsylvania, :
                                              :
                    Defendants.               :
_____:

**<u>DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

A.    The Handbook specifies the process for the imposition of sanctions, and Plaintiff
fails to identify any specific contractual provisions that were breached. ......................... 1

B.    Plaintiff cannot state a contract claim based on "free speech," i.e., the outcome of
the disciplinary process. ................................................................................................... 5

C.    Plaintiff fails to state a race discrimination claim (Counts 2, 3, 5) because she
does not allege facts supporting an inference that racial discrimination motivated
any relevant decision. ....................................................................................................... 7

D.    Plaintiff's Opposition does not salvage her false light claim (Count 4). ........................ 10

CONCLUSION .................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................8

*Baker v. Wilmington Tr. Co.*,
    320 F. Supp. 2d 196 (D. Del. 2004)......................................................9

*Barker v. Boeing Co.*,
    21 F. Supp. 3d 417 (E.D. Pa. 2014), *aff'd*, 609 F. App'x 120 (3d Cir. 2015)............7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................8

*Bushra v. Main Line Health, Inc.*,
    No. 23-1031, 2024 WL 1219962 (E.D. Pa. Mar. 21, 2024) ..................10

*Fields v. N.Y. Off. of Mental Retardation & Developmental Disabilities*,
    115 F.3d 116 (2d Cir. 1997)..................................................................7

*Ford-Greene v. NHS, Inc.*,
    106 F. Supp. 3d 590 (E.D. Pa. 2015) ....................................................9

*Groff v. DeJoy*,
    600 U.S. 447 (2023)................................................................................7

*Joseph v. Pepperidge Farm Inc.*,
    No. CV 22-4049, 2024 WL 921416 (E.D. Pa. Mar. 4, 2024) ...............9

*Kengerski v. Harper*,
    6 F.4th 531 (3d Cir. 2021) ....................................................................9

*Vu v. Kott*,
    No. 23- 03336, 2024 WL 2802849 (E.D. Pa. May 31, 2024)................9

*Waggaman v. Villanova Univ.*,
    No. Civ. 04-4447, 2008 WL 4091015 (E.D. Pa. Sept. 4, 2008) ...........4

*Zielonka v. Temple Univ.*,
    No. 99-5693, 2001 WL 1231746 (E.D. Pa. Oct. 12, 2001) ..................10

**State Cases**

*Baker v. Lafayette College*,
    504 A.2d 247 (Pa. Super. Ct. 1986), *aff'd*, 516 Pa. 291 (1987) ................4

*Ferrer v. Trs. of Univ. of Pa.*,
   573 Pa. 310 (2002) ..................................................................................................4

*Mowry v. McWherter*,
   365 Pa. 232 (1950) ..................................................................................................3

*Murphy v. Duquesne Univ. of the Holy Ghost*,
   777 A.2d 418 (Pa. Super. Ct. 2001) ...................................................................4, 5

*Shepard v. Temple Univ.*,
   948 A.2d 852 (Pa. Super. Ct. 2008) ......................................................................4

## Other Authorities

House Committee Reports H.R. Rep. No. 102-40(I), *reprinted in* 1991
   U.S.C.C.A.N. 549 ..................................................................................................7

## INTRODUCTION

In her Opposition to Defendants' ("Penn") Motion to Dismiss, Plaintiff points to certain provisions of the Faculty Handbook ("Handbook") which, she contends, promote the virtues of academic speech and protect faculty members from arbitrary sanctions. But she does not deny that the Handbook specifies the procedures applicable to faculty sanctions. Nor can she dispute that she was sanctioned after a full hearing before five tenured faculty members and several additional levels of review – precisely as prescribed in the Handbook. Plaintiff is obviously disappointed by the outcome and seems to believe that the proceedings were unfair, but critically, she has not articulated an actual violation of any specific contractual provision regarding her proceedings. She also attempts to re-cast her discrimination claims as complaints about treatment based on her own race, religion and gender, but she does not identify any facts that would support an inference of employment discrimination. Finally, she cannot deny that her false light invasion of privacy claim is based on a public statement by Penn *required* by the Handbook, and accurate in all respects. In short, Plaintiff has offered no arguments that would salvage her legally deficient claims.

## ARGUMENT

### A. The Handbook specifies the process for the imposition of sanctions, and Plaintiff fails to identify any specific contractual provisions that were breached.

Plaintiff launches her opposition brief with statements that "[t]enure has long been cherished by colleges and universities," and that tenured professors "are provided with the job security needed[.]" Opp'n at 1. She also tells the Court that "[t]enure has a special place in academia." *Id* at 6. She is correct, of course, but she does not seem to acknowledge in her brief that she is still a tenured professor at Penn. The sanction that triggered this lawsuit did not revoke her tenure. It resulted in a one-year suspension from teaching, a salary reduction for that year, an elimination of summer pay, and the removal of a named chair from her title.

The question posed by Plaintiff's breach of contract claim, therefore, is not whether Plaintiff's tenure was contractually protected, but whether the sanction imposed by Penn breached a specific contractual provision that this Court is empowered to review. The answer is "no," as evidenced by the plain language of the Handbook.

The contract – the Handbook – lays out a detailed procedure to be followed when a "major sanction" against a faculty member is considered. It is a multi-step process, beginning with a request from the Dean of the School to convene a Hearing Board to the Chair of the Faculty Senate; the appointment of a Hearing Board; consideration of disqualification requests; a decision by the Hearing Board whether to proceed based on written charges provided by the Dean; notification of a hearing; service of a written response to the charges; document production as directed by the Hearing Board; a hearing pursuant to specified procedures, with observers as requested and delineated burdens of proof; a Report from the Hearing Board with recommendations as to sanctions to be imposed, if any; consideration of the findings and recommendations by the University President; and an appeal to a Faculty Senate committee if requested by the respondent. *See* Am. Compl. ("Compl."), Ex. 2 ("Handbook") § II.E.16.4. The Handbook guarantees a process, rather than a particular result. And questions regarding the contractual rights of faculty members are resolved exclusively through that process.

Every step in this process was followed, and Plaintiff does not deny that. Instead, she quarrels mostly with the ultimate decisions made after that process. In her Amended Complaint, she alleges that the Hearing Board's Report failed to describe adequately how she violated behavioral standards, did not credit her arguments, and improperly weighed, evaluated and analyzed testimony. Compl. ¶ 70. Plaintiff also complains about a purported failure to analyze "disproven" or "disputed" testimony, distinguish comments made off-campus and credit her

witnesses. Compl. ¶ 73. Finally, she complains about characterizations of evidence by Penn, and decisions made by the Hearing Board about document production, evidentiary questions and requests to disqualify Hearing Board members. Compl. ¶ 118. But critically – and this is fatal to her claim – Plaintiff does not identify any specific contractual steps in the process that were not followed. On the contrary, in her Amended Complaint and in her Opposition, she complains about the result, rather than a failure to follow the contractually defined process.

Plaintiff's Opposition cites the following paragraphs in her Amended Complaint as purportedly containing "repeated[] reference[es]" to these contractual provisions she claims have been violated: Paragraphs 28, 45-52, 109-110, 112-113 and 122-127. Opp'n at 5. Paragraph 28, however, includes *no* citation to any specific policy or Handbook provision. Paragraphs 45-52 merely gesture toward general provisions of the Handbook that dictate the process for disciplinary procedures. Paragraphs 109-110 and 112-113 broadly reference a "Tenure Contract," but do not provide a specific citation to any particular provision of such. Finally, Paragraphs 122-127 reference the "Open Expression Policy" and statements made by then-President Elizabeth Magill, but, once again, in none of these Paragraphs does Plaintiff cite to a specific guarantee that was supposedly breached. It is readily apparent that Plaintiff is asking this Court to reexamine the Hearing Board's decision, rather than consider a breach of an identifiable contractual provision.

The Handbook may articulate certain policy judgments that favor faculty members, including concepts of academic freedom, but as a whole, it demonstrates that when those principles come in conflict with more specific concerns about alleged violations of university standards, the means for resolving such questions is through the procedures specified in the Handbook. *See Mowry v. McWherter*, 365 Pa. 232, 239 (1950) ("It is well settled doctrine that a contract must be construed as a whole[.]"). Consistent with this principle, courts do not wade into disputes between

faculty members and universities over academic speech, nor do they second-guess judgment calls made by faculty committees, deans, and administrators. In *Baker v. Lafayette College*, 504 A.2d 247, 256 (Pa. Super. Ct. 1986), *aff'd*, 516 Pa. 291 (1987), the court emphasized that it was powerless to undertake a de novo review of a substantive decision that was made in compliance with contractually delineated procedures. *See also Waggaman v. Villanova Univ.*, No. Civ. 04-4447, 2008 WL 4091015, at *20 (E.D. Pa. Sept. 4, 2008) ("Breach of a tenure contract can consist of failure by the institution to comply with the procedures established, but no action exists to challenge whether a university simply made the wrong decision after following the correct process."); *Ferrer v. Trs. of Univ. of Pa.*, 573 Pa. 310, 340 (2002) ("We observed that a breach of contract claim may be brought by a tenured professor when it is asserted that the University failed to comply with the procedures established by the parties' contractual agreement. ***This cause of action is distinguishable from a tenured professor's claim that a university that has followed the established procedures for termination has made the wrong decision***." (emphasis added) (discussing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 432-33 (Pa. Super. Ct. 2001))); *Shepard v. Temple Univ.*, 948 A.2d 852, 857 (Pa. Super. Ct. 2008) ("[W]e conclude[] that [plaintiff] is 'essentially attempting to secure through a breach of contract action a *de novo* review of' Temple's decision to deny her tenure. This she cannot do.") (citing *Baker*, 504 A.2d at 256).

Plaintiff cites *Murphy* for the proposition that judicial review is the default unless a contract "so specifies." Opp'n at. 12. This is an incomplete and inaccurate reading of the case. In *Murphy*, a former law professor at a private university sued for breach of contract after he was accused of serious misconduct potentially warranting termination of his employment. 777 A.2d at 421. Just as here, the plaintiff was provided a hearing before a Grievance Committee. *Id.* at 422. After the hearing, the Committee issued a report finding that the plaintiff had abused his power as a

professor. *Id.* The Court held that Murphy was not entitled to relitigate the merits of the Committee's findings because there was "nothing in the Contract to indicate that any of the judgments relating to a faculty member's continued place in the University, or lack thereof, would be open to a judge or jury to override." *Id.* at 433. The court went on to state that it would be "unreasonable to believe that the parties intended that the process for deciding the matter of tenure forfeiture, which was so carefully elaborated in their Contract to the point of final determination, could be completely circumvented by the filing of a civil action." *Id.* at 433-34.

That reasoning applies equally here. Penn does not need to "cite a specific contractual provision whereby its tenured professors agree to waive their right to judicially enforce their employment contracts," as Plaintiff claims. Opp'n at 13. Rather, just as in *Murphy*, there is no provision in the contract suggesting the parties ever intended for judicial override of a substantive decision that followed painstaking compliance with every contractual step in the sanction process. *See, e.g.*, Handbook § II.E.16.4.I.5 (noting that a decision is meant to be *final*).

## B. Plaintiff cannot state a contract claim based on "free speech," i.e., the outcome of the disciplinary process.

Plaintiff argues that Penn breached "promises to respect free speech and academic freedom" by imposing sanctions for public statements that were widely viewed as offensive and inappropriate. She cites First Amendment *principles*, Opp'n at 6-17, but she does not assert a constitutional claim. Nor could she, as Penn is a private institution. Instead, she wraps her freedom of speech argument into her breach of contract claim, arguing that Penn has agreed to provide First Amendment-type protections to professors. Yet again, she misses the point and fails to consider the Handbook as a whole. The question presented here is not whether academic speech is encouraged, but rather *who* determines whether a professor has crossed over from fair debate and dialogue into hateful or racist polemic or conduct that undermines the learning environment and

violates University standards.  Is it the Faculty Hearing Board, with reviews by the Penn President and a Faculty Senate Committee, or is it a court?  At Penn, that decision is made exclusively by a Hearing Board composed of fellow faculty members, with follow-up review by the President and a Faculty Senate Committee.

The answer to the question is clear when the Handbook is considered in its entirety.  While the Handbook protects academic freedom, it also prohibits certain conduct and speech, such as harassment.  And, it provides a mechanism for determining whether speech is protected under principles of academic freedom or whether it runs afoul of standards designed to protect members of the University community.  That mechanism is precisely what is prescribed by the Handbook, and it is the process that was followed from the moment the Law School Dean initiated the sanction process.  *See* Def.'s Mot. to Dismiss ("Mot.") at 1-12; Handbook § II.E.16.4.A-G.

Significantly, Plaintiff raised the academic speech issue in the disciplinary proceedings.  Plaintiff argued to the Hearing Board that her speech was academic in nature and not sanctionable.  She testified as to the basis of that belief and called witnesses from Penn and other universities in support of her position.  *See, e.g.*, Compl. Ex. 16 at 110, 142 (Counsel for Plaintiff Wax Letter to Penn: "Basic principles of academic freedom protect such statements from penalty" and "Under fundamental principles of academic freedom, Prof. Wax is fully entitled to say what she said without penalty or sanction.").  After an extensive evidentiary hearing and the submission of arguments, the Hearing Board rejected her arguments.  *See, e.g.*, Compl. Ex. 6 at 23 & n.2 (Hearing Board's decision considering and rejecting argument); *see also* Compl. Ex. 8 at 53-54 (President's decision considering and rejecting argument).  Her breach of contract claim, and her invocations of the First Amendment, are nothing more than an improper attempt to have this Court second-guess the merits of the Hearing Board's decision.

**C.    Plaintiff fails to state a race discrimination claim (Counts 2, 3, 5) because she does not allege facts supporting an inference that racial discrimination motivated any relevant decision.**

As Penn explained in its Motion, Plaintiff's race discrimination claims fail because she does not allege disparate treatment based on ***her*** race.  Plaintiff's Opposition doubles down, acknowledging that she is challenging discipline imposed based on her ***statements, not her race,*** and offering various novel theories about why her claims should survive.  They should not.

First, Plaintiff contends that Title VII and Title VI prohibit Penn from imposing discipline for statements relating to race.  This contention is at odds with Title VII itself, which prohibits employees from engaging in harassing speech or creating a hostile work environment.  *See, e.g.*, *Barker v. Boeing Co.*, 21 F. Supp. 3d 417, 423 (E.D. Pa. 2014), *aff'd*, 609 F. App'x 120 (3d Cir. 2015) (finding that employees who were terminated after posing for pictures in KKK robes while at work could not maintain their own claims of racial discrimination because it was clear that the employer had terminated them because of their own racially harassing conduct).  Were Plaintiff's theory correct, "Title VII would be at war with itself."  *See Groff v. DeJoy*, 600 U.S. 447, 472 (2023) ("If bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself.").  Federal law prohibits discrimination based on a person's race, not a person's statements about race.  *See* Mot. at 22-24 (citing cases). [1]

Second, Plaintiff asserts, in conclusory fashion, that had she not been white and Jewish,

---

[1] Plaintiff improperly seeks to rely on Congress's amendment of Title VII, but § 2000e-2(m) "was enacted solely to overrule ***the part*** of *Price Waterhouse* that allowed an employer to avoid all liability by prevailing on its dual motivation defense."  *See Fields v. N.Y. Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 124 (2d Cir. 1997) (citing House Committee Reports H.R. Rep. No. 102–40(I), at 45–46, 48–49, *reprinted in* 1991 U.S.C.C.A.N. 549, 583–84, 586–87) (emphasis added).  No court has interpreted that amendment in the way that Plaintiff proffers. Even so, she makes no such arguments as to Section 1981, and therefore, that claim fails in any event.

she would not have been disciplined.  But the Amended Complaint and her Opposition are devoid of any facts to support this claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

Plaintiff cites no comments by decisionmakers indicating they hold a bias against white, Jewish women, or examples of any other professor or employee who engaged in a "long, persistent, and well-documented" "history of disrespectful and dismissive treatment of various groups," that "demonstrate[d] a pattern of flagrant, even escalating disregard for University expectations and professional norms regarding the treatment of members of the University community," denying students the opportunity "to learn and to be treated equitably" that they "reasonably expect." Compl. Ex. 6 at 25-26.  In short, Plaintiff has alleged no facts to support an inference of discrimination by Dean Ruger, the Hearing Board, or anyone else who considered her case.

Plaintiff alleges that she does not have to identify similarly situated comparators because she is challenging "Penn's discriminatory speech policy."  Opp'n at 35.  However, this argument fails because the policy is neutral on its face.  In seeking to challenge an allegedly discriminatory application of the policy, Plaintiff again must plead facts suggesting that *her race* actually motivated the decisionmakers who applied the policy.  *See* Mot. at 21 (citing cases).  Here, she has alleged no facts showing that discriminatory animus toward Plaintiff's race motivated Dean Ruger, the members of the Hearing Board, or anyone else involved in disciplining Plaintiff.  Her references to isolated comments by faculty members in other schools, many of which occurred after her own disciplinary proceeding was conducted, shed no light on the motive of decisionmakers in a process that originated in the Law School and was then confined to the charges brought by Dean Ruger.  Even construed liberally, her broad conclusory allegations cannot support

a claim for racial discrimination.  *See, e.g.*, *Joseph v. Pepperidge Farm Inc.*, No. CV 22-4049, 2024 WL 921416, at *4 (E.D. Pa. Mar. 4, 2024) (dismissing racial discrimination claims, in part, because a plaintiff did "not sufficiently plead the existence of any similarly-situated non-members of the protected class who were treated more favorably" and rejecting one of the plaintiff's alleged comparators as "not [] suitable" because he did not allege that they had the "same supervisor or were subject to the same standards."); *Vu v. Kott*, No. 23- 03336, 2024 WL 2802849, at *3 (E.D. Pa. May 31, 2024) (dismissing race discrimination claims where plaintiff only pointed to "generic allegations" and "broad statements" that did "not rise to the level of creating an inference of discrimination").

Finally, Plaintiff makes a new "associational discrimination" argument that she "advocated on behalf of protected classes who were targeted by Penn's race-based admissions policies." Opp'n at 28-29.  This Hail Mary argument does not save her discrimination claims.  As an initial matter, she does not assert this supposed associational discrimination theory in the Amended Complaint, nor did she exhaust such a theory in her EEOC charge.  The Court's analysis can end there, and the claim should be dismissed.  *See, e.g.*, *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 604–05 (E.D. Pa. 2015) (dismissing certain aiding and abetting claims with prejudice because the plaintiff failed to raise such claims in her administrative charge).  Turning to the merits, Plaintiff has not identified in her Opposition (or Amended Complaint) with *whom* she purportedly associated that caused her to suffer discrimination.  Nor has she pled any other facts suggesting that she experienced associational discrimination because she associated with someone of another race.[2]

---

[2] Associational discrimination entails "discriminat[ion] against an employee because of his association with *someone* of a different race" based on an employer's disapproval of the interracial association.  *Kengerski v. Harper*, 6 F.4th 531, 538 (3d Cir. 2021) (emphasis added) (holding that discrimination based on plaintiff's association with interracial grand-niece could give rise to a claim); *Baker v. Wilmington Tr. Co.*,

At bottom, Plaintiff's Opposition confirms that her claims are about her speech and the targets of her speech – not her race or any discrimination based on her race. The statutes she invokes do not protect different treatment of speech.

**D.    Plaintiff's Opposition does not salvage her false light claim (Count 4).**

Plaintiff's invasion of privacy claim should be dismissed because it is based on a public statement by Penn that was *required* by the Handbook, and accurate in all respects. To start, Plaintiff does not identify any statements presenting her in a false light. Rather, the Opposition merely reiterates her belief that she was portrayed "not only as a racist but a liar," an allegation already addressed by Penn in its motion to dismiss. *See* Mot. at 35.

Turning to Penn's statements published in the *Almanac*, Interim President J. Larry Jameson's report in the *Almanac* was a factual report of the case and its disposition, exactly as required by the Handbook. *See* Handbook § II.E.16.6.D. Plaintiff does not dispute that the Handbook's provisions represent a binding contract with Penn. Indeed, she has brought a breach of contract claim in this case seeking to enforce its alleged terms. Because the publication and its content were contractually mandated, she cannot be heard to complain that Penn wronged her by following its terms. This claim should be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, in full, with prejudice.

---

320 F. Supp. 2d 196, 203 (D. Del. 2004) (holding that "associational discrimination claim is not well founded because it is based on" acquaintance with foreign customers); *Zielonka v. Temple Univ.*, No. 99-5693, 2001 WL 1231746, at *5 (E.D. Pa. Oct. 12, 2001) (holding that an associational discrimination claim "must be based on the difference in his race and that of those [s]he associates with"). In addition, "there must be 'at least a modicum of evidence of a causal link between the adverse action complained of and ... the relationship or association in question.'" *Bushra v. Main Line Health, Inc.*, No. 23-1031, 2024 WL 1219962, at *7 (E.D. Pa. Mar. 21, 2024) (quoting *Zielonka*, 2001 WL 1231746, at *5 n.7).

Dated:  April 2, 2025                MORGAN, LEWIS & BOCKIUS LLP

By:  */s/ Michael Banks*

Michael L. Banks (Bar No. 35052)
A. Klar Fitzpatrick (Bar No. 309329)
Arielle H. Steinhart (Bar No. 331886)
2222 Market Street
Philadelphia, PA  19103-3007
+1.215.963.5000
michael.banks@morganlewis.com
klair.fitzpatrick@morganlewis.com
arielle.steinhart@morganlewis.com

TUCKER LAW GROUP
Joe H. Tucker (Bar No. 56617)
1801 Market Street, Suite 2500
Philadelphia, PA  19103
+1.215.875.0609
jtucker@tlgattorneys.com

*Counsel for Defendants the Trustees of the
University of Pennsylvania*

## CERTIFICATE OF SERVICE

I, Michael L. Banks, hereby certify that on April 2, 2025, a true and correct copy of the foregoing Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint was electronically filed and is available for viewing and downloading from the Court's ECF system.

*/s/ Michael Banks*
Michael L. Banks