**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| Amy Wax, | : |
| | : |
| Plaintiff, | : |
| | :     Civ. No. 2:25-cv-00269-TJS |
| v. | : |
| | : |
| The Trustees of the University of Pennsylvania, | : |
| | : |
| Defendants. | : |

---

## <u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 4

III.  PROCEDURAL HISTORY ............................................................................... 6

IV.  ARGUMENT ...................................................................................................... 6

    A.  Plaintiff Has Failed to Demonstrate That She Is Likely to Succeed on the Merits of Her Claims ......................................................................... 7

        1.  Plaintiff Is Not Likely to Succeed on Her Breach of Contract Claim ............................................................................................... 7

        2.  Plaintiff Is Not Likely to Succeed on Her Discrimination Claims .......... 10

    B.  Plaintiff Cannot Show Imminent, Irreparable Injury ........................................... 14

        1.  Economic Harm Cannot Constitute Irreparable Injury ........................... 15

        2.  Plaintiff Has Failed to Prove Any Reputational Harm, Much Less That Such Harm Is Imminent and Irreparable ......................................... 15

            a.  Plaintiff Offers No Evidence of Her Alleged Reputational Injuries ............................................................................ 16

            b.  Plaintiff's Alleged Reputational Injuries Are Not Irreparable ................................................................................ 20

            c.  Injunctive Relief Will Not Remedy the Alleged Reputational Injury ................................................................ 22

        3.  Plaintiff Can Not Presume Irreparable Injury from Alleged Violations of Her Civil or Contractual Rights ........................................ 23

    C.  The Balance of Equities and Public Interest Weigh in Defendant's Favor ......... 25

        1.  The Balance of Equities Weigh in Defendant's Favor ........................... 25

        2.  The Public Interest Favors Defendant ..................................................... 27

V.  CONCLUSION ................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
    669 F.3d 359 (3d Cir. 2012)..................................................................................7

*Bagley v. Yale Univ.*,
    No. 3:13-CV-1890 CSH, 2014 WL 7370021 (D. Conn. Dec. 29, 2014)................................22

*Baker v. Lafayette Coll.*,
    350 Pa. Super. 68 (1986), *aff'd*, 516 Pa. 291 (1987) ..............................................10

*Bostock v. Clayton Cnty.*,
    590 U.S. 644 (2020)...........................................................................................11

*Boynes v. Limetree Bay Ventures LLC*,
    110 F.4th 604 (3d Cir. 2024) .................................................................................7

*Bryant v. Wilkes-Barre Hosp. Co., LLC*,
    146 F. Supp. 3d 628 (M.D. Pa. 2015) .......................................................................11

*Cath. High Sch. of Diocese of Pittsburgh, Inc. v. Fed'n of Pittsburgh Diocesan Tchrs.*,
    No. 2:21-CV-1808-RJC, 2022 WL 3867905 (W.D. Pa. Aug. 30, 2022)........................19, 23

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................7

*Clayborn v. Distelrath*,
    No. CV 19-12971, 2019 WL 6003293 (E.D. Mich. Oct. 23, 2019), *R. & R. adopted*, No. 19-12971, 2019 WL 5964586 (E.D. Mich. Nov. 13, 2019) ............................25

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*,
    614 F.2d 351 (3d Cir. 1980)..................................................................................16

*Com. of Pa. ex rel. Creamer v. U.S. Dep't of Agric.*,
    469 F.2d 1387 (3d Cir. 1972).................................................................................14

*Davis v. City of Phila. Water Dep't*,
    57 F. App'x 90 (3d Cir. 2003)................................................................................13

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
    108 F.4th 194 (3d Cir. July 15, 2024), *cert. denied sub nom. Gray v. Jennings*,
    145 S. Ct. 1049 (2025)............................................................................6, 7, 20, 22

*ECRI v. McGraw–Hill, Inc.*,
    809 F.2d 223 (3d Cir. 1987)....................................................................................20

*Fakhreddine v. Univ. of Pa.*,
    No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), *appeal filed*, No.
    25-1290 (3d Cir. Feb. 20, 2025) ...............................................................................8

*Farrell v. Butler Univ.*,
    421 F.3d 609 (7th Cir. 2005) ...................................................................................28

*Garrett v. Am. Fed'n of State, Cnty. & Mun. Emps. AFL-CIO*,
    726 F. Supp. 3d 404 (E.D. Pa. 2024) ......................................................................25

*Golovan v. Univ. of Del.*,
    No. 13–862–RGA, 2013 WL 4724990 (D. Del. Sept. 3, 2013)................................22

*Groff v. DeJoy*,
    600 U.S. 447 (2023)..................................................................................................11

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
    774 F.3d 192 (3d Cir. 2014).....................................................................................21

*Hurley v. Irish-Am. Gay Grp. Of Bos.*,
    515 U.S. 557 (1995)..............................................................................................8, 24

*Iadimarco v. Runyon*,
    190 F.3d 151 (3d Cir. 1999).....................................................................................12

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989).....................................................................................14

*Makky v. Chertoff*,
    541 F.3d 205 (3d Cir. 2008).....................................................................................11

*Marxe v. Jackson*,
    833 F.2d 1121 (3d Cir. 1987)...................................................................................24

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)....................................................................................................6

*Morton v. Beyer*,
    822 F.2d 364 (3d Cir. 1987).....................................................................................15

*Moteles v. Univ. of Pa.*,
    730 F.2d 913 (3d Cir. 1984).....................................................................................24

*Murphy v. Duquesne Univ. of the Holy Ghost*,
    777 A.2d 418 (Pa. 2001) ............................................................................................9

*New Dana Perfumes Corp. v. The Disney Store, Inc.*,
  131 F. Supp. 2d 616 (M.D. Pa. 2001) ...................................................................23

*Nken v. Holder*,
  556 U.S. 418 (2009) ...............................................................................................7

*One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*,
  987 F. Supp. 317 (D.N.J. 1997) ...........................................................................21

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990)..................................................................................15

*Parra v. U.S. Parole Comm'n*,
  No. CV 05-321, 2005 WL 8174431 (W.D. Pa. Dec. 15, 2005).............................16

*Porrata v. Pa. Interscholastic Athletic Ass'n*,
  38 F. Supp. 3d 549 (E.D. Pa. 2014) ...............................................................15, 19

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
  288 F.3d 548 (3d Cir. 2002)..................................................................................10

*Punnett v. Carter*,
  621 F.2d 578 (3d Cir. 1980)..................................................................................14

*Qin v. Vertex, Inc.*,
  100 F.4th 458 (3d Cir. 2024) ................................................................................12

*Regents of Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985)........................................................................................26, 28

*Reinhard v. Johnson*,
  209 F. Supp. 3d 207 (D.D.C. 2016) ......................................................................19

*Republican Party of Pa. v. Cortes*,
  218 F. Supp. 3d 396 (E.D. Pa. 2016) ...................................................................20

*Roberts v. City of Philadelphia*,
  No. 96-4154, 1996 WL 472412 (E.D. Pa. Aug. 20, 1996) ...................................21

*Sampson v. Murray*,
  415 U.S. 61 (1974)................................................................................................14

*Shea v. Mountain View Sch. Dist.*,
  No. 14-01189, 2014 WL 3590006 (M.D. Pa. July 21, 2014) ...............................21

*Trudeau v. Fed. Trade Comm'n*,
  384 F. Supp. 2d 281 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006)............19

*United States v. Philadelphia*,
573 F.2d 802 (3d Cir. 1978)..................................................................24

*Vonderheide v. Harrisburg Area Cmty. Coll.*,
No. 19-3096, 2019 U.S. Dist. LEXIS 183254 (E.D. Pa. Oct. 23, 2019) ...............................21

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..................................................................14

**Statutes**

42 U.S.C. § 2000e-2(a) ..................................................................11

**Other Authorities**

The Ayaan Hirsi Ali Podcast, *Bring Back Bourgeois Virtues - Amy Wax*, YouTube (Nov. 3 2024), https://www.youtube.com/watch?v=4O_oeRCuN0c .......................................8

Emily Chang and Abby Cruz, *Penn imposes major sanctions against controversial law professor Amy Wax, including a 1-year suspension*, ABC News (Sep. 24, 2024), ABC News, https://tinyurl.com/3nv2vawh .......................23

The Glenn Show (Glenn Loury), *A Blow against Free Speech at Penn Law*, YouTube (March 2, 2025), https://www.youtube.com/watch?v=-KYLIAr7I9c ..................18

The Harvard Salient, *Amy Wax, Jeremy Carl, Garett Jones, Simon Hankinson | Immigration, The Border, & American Identity*, YouTube (Feb. 8, 2025), https://www.youtube.com/watch?v=S0EURoS1Ovw ...........................................18

*Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. & the Workforce*, 118th Cong. (2023), https://perma.cc/3JA8-XVG3 ..................................................................9

https://tinyurl.com/4c9m4ysa..................................................................1

Intercollegiate Studies Institute, *The Future of Conservatism in America*, YouTube (Nov. 2024), https://www.youtube.com/watch?v=2P4HkjNAUNQ (featuring Amy Wax as a speaker; ; ; ...................................................18

*Oksona Mironova, Soviet Daughter: An Interview with Julia Alekseyeva, Lilith* (Feb. 24, 2017), https://tinyurl.com/memnhn5k ................................................12

Ricochet.com, *Unsafe with Ann Coulter: Amy Wax*, YouTube (Dec. 11, 2024), https://www.youtube.com/watch?v=QRDJU6X1GW8..................................18

Tat Bellamy-Walker, *Penn Law to sanction professor who said U.S. 'better off' with fewer Asians*, NBC News (Jan. 20, 2022), https://tinyurl.com/e297ktkj ...........................19

Thales College, *"School Choice: A Vehicle for Constructive and Meaningful Citizenship" from Professor Amy Wax*, YouTube (April 9, 2025) (giving keynote address at Liberty & Literacy Forum), https://www.youtube.com/watch?v=udNhSUog2DA..............................................................18

Vimal Patel and Stephanie Saul, *Penn Suspends Amy Wax, Law Professor Accused of Making Racist Comments,* Amy Chang and Abby Crux, New York Times (Sep. 23, 2024), https://tinyurl.com/5n8c865x ............................................................22

Whither the Loonversity (Adam Ellwanger), *Dr. Amy Wax, Robert Mundheim Professor of Law, U of Penn*, YouTube (March 6, 2025), https://www.youtube.com/watch?v=nyQgx8XiOUU..............................................................18

## I.    <u>INTRODUCTION</u>

Plaintiff Amy Wax is a Professor at the University of Pennsylvania Carey Law School (the "Law School").  For years, Plaintiff has alienated and demeaned students and faculty of the University of Pennsylvania ("Penn," the "University," or "Defendant") through her conduct and offensive remarks about race, gender, national origin, and sexual orientation.  Her behavior has been publicized in national media and condemned widely by colleagues, students, and academics, many of whom have called for her removal from the Penn faculty.  But Plaintiff has not been removed from the Penn faculty or the least bit apologetic.  She has embraced the backlash and used it to fuel her divisive personal brand, claiming that "being a **racist is an honorific**" because it "means **you notice reality** and to me that's a positive thing[.]"  Am. Compl. Ex. at 23 (Hearing Board Report) (emphasis added).[1]

Plaintiff's aggregating and escalating conduct, including offensive comments directly targeted at Penn students and faculty, led to the filing of internal charges by the Law School Dean in March 2022.  In response to those charges, the Faculty Senate convened a panel of five tenured faculty members to serve on a Hearing Board.  After three days of testimony and the consideration of voluminous documentary evidence, the Hearing Board issued a report in June 2023 finding that Plaintiff had engaged in "flagrant unprofessional conduct" that "had a detrimental impact on equal access to educational opportunities at the Law School and on the community more broadly."  Am. Compl. Ex. at 23.  The Hearing Board recommended the imposition of a major sanction and specific disciplinary measures, including the removal of Plaintiff's named Chair and a one-year suspension.  That recommendation was accepted by the University President in August 2023 and

---

[1] This statement is referenced in the exhibits attached to the Verified Amended Complaint (cited throughout as "Am. Compl. Ex.").  Plaintiff does not deny having made any of the referenced statements.  The source of the quote is available at https://tinyurl.com/4c9m4ysa.

ultimately affirmed in May 2024 by the Faculty Senate Committee on Academic Freedom.  Am. Compl. Ex. at 29.  In accordance with the Faculty Handbook, the University President's letter imposing the sanction was published in the Penn *Almanac* in September 2024.  Several aspects of the sanction were implemented immediately, while others – such as the one-year suspension, including from teaching – are scheduled to take effect in the 2025-2026 academic year.

Plaintiff now asks this Court to overrule her own faculty colleagues and the University President, and to order her return to the classroom *before* her claims are even litigated to a conclusion.  Despite unanimous findings by the Hearing Board and the President that her offensive behavior interfered with the access of students to educational opportunities, Plaintiff asks that this Court focus solely on the harm that she believes she may suffer while this litigation is pending.

Remarkably, Plaintiff offers no evidence in support of her request for extraordinary relief. There is no declaration attached to her motion, nor does she cite any evidence other than the most conclusory statements in her Amended Complaint.  At the end of the day, she fails completely to demonstrate either a likelihood of success on the merits or irreparable injury.

*First*, as discussed in Penn's pending motion to dismiss, Plaintiff fails to state viable claims for relief, let alone establish a likelihood of success on the merits.  Plaintiff has not identified any contractual obligation that was even arguably breached by Penn.  The "contract" on which she relies is the Faculty Handbook, which entitled her to a hearing before a board of faculty members and several levels of review.  And that is precisely what she received – a comprehensive hearing before faculty peers and subsequent review by the University President and a Faculty Senate Committee.  In other words, the "contract" was honored fully.  Plaintiff's racial discrimination claims similarly fail, because there is no statutory protection for speech *about* race, nor is there

any basis for an inference that Plaintiff was the victim of discrimination based on her own protected characteristics.[2]

*Second*, Plaintiff fails to demonstrate that she will suffer irreparable harm if the final elements of the sanction take effect. She does not explain how or why this is different from any other employment case in which a plaintiff is aggrieved by some measure of discipline. Instead of submitting a declaration or some evidence to support her request, Plaintiff seems to be relying on her verified pleading, which states in the most conclusory terms that if she is not allowed to teach in the next academic year she will suffer "a harm for which money damages cannot provide adequate relief." *See* Am. Compl. ¶ 115. That is it. No elaboration is offered, and probably for good reason, as an inability to teach during the next two semesters does not come close to the kind of irreparable injury that would warrant injunctive relief. As Plaintiff is well aware, it is quite common for faculty members to take time off from teaching, whether for scholarly leave/sabbatical or for other reasons. In fact, Plaintiff herself did not teach in 2019-2020 because she opted to take a year of leave. As for her suggestion that the sanction will result in harm to her reputation, that is a red herring, at best. The sanction was announced publicly more than eight months ago, and any reputational impact is well behind us at this point.

*Third*, neither the equities nor the public interest favors an injunction. An injunction that interferes with Penn's published and comprehensive faculty disciplinary process would undermine the integrity of academic self-governance, which is highly disfavored by the courts. And it would only encourage other disgruntled faculty members to turn to the courts for interim relief when they are frustrated by decisions on discipline, tenure, teaching curricula, and other matters. There is a

---

[2] Plaintiff also asserts a claim for false light invasion of privacy, but she does not rely on that claim as a basis of her request for a preliminary injunction.

reason why courts do not wade into academic disputes lightly, especially when plaintiffs seek premature relief without a full opportunity for the disposition of claims on the merits. That reason is particularly compelling in this case given the lengthy process that was followed by Penn before any discipline was imposed.

Plaintiff bears a heavy burden in asking the Court to interfere with an academic process on an interim basis, and she does not come close to satisfying that burden. Her extraordinary request for injunctive relief should be denied.

## II.     FACTUAL BACKGROUND

The factual background of this case is discussed at length in Defendant's Memorandum in support of its Motion to Dismiss ("Motion to Dismiss"). Briefly, after years of Plaintiff's escalating rhetoric and increasingly hostile conduct, the Dean of the Law School charged Plaintiff with a major infraction based on her flagrant disregard of Penn's standards and mission ("the Charges"). Am. Compl. Ex. at 11-20 (Charging Document of Dean Ted Ruger).

Over the next two years, the University painstakingly ensured that the Charges against Plaintiff were evaluated in a fair, neutral manner that adhered to the procedures set forth in the Faculty Handbook ("the Handbook"). This included the Chair of the University-wide Faculty Senate convening a panel of neutral faculty (the "Hearing Board") to preside over a formal hearing to consider the Charges. The hearing took place over three days, from May 1 to May 3, 2023, during which both sides offered arguments, submitted evidence, and presented testimony and reports from students, alumni, faculty, and expert witnesses. Am. Compl. Ex. at 48-49 (Decision of the President in the Matter of Professor Amy Wax). On June 21, 2023, the Hearing Board issued its Report and Recommendation (the "Hearing Board's Report"), which unanimously found that Plaintiff had violated Penn's privacy policies and had "flagrantly" violated University norms

requiring her to treat all students equitably and with respect.  Am. Compl. Ex. at 23-30 (Hearing Board Report).

The Hearing Board recommended sanctions but did not recommend the termination of Plaintiff's employment or a revocation of tenure.  Instead, it recommended: a one-year suspension at half-pay (but with full benefits) to begin at the start of the 2025-2026 academic year; the loss of Plaintiff's named chair; the loss of Plaintiff's summer pay; a public reprimand; and a requirement that Plaintiff state during any public appearances that she did not speak on behalf of Penn.  *Id.*

University President Elizabeth Magill ("President Magill") reviewed the report and recommendation, along with the full record from the hearing and Plaintiff's 123-page written objections to the Hearing Board's Report.  President Magill concluded that there was no reason to depart from the Hearing Board's findings and wrote her own decision accepting the Hearing Board's recommendation.  Am. Compl. Ex. at 48-55.  As President Magill aptly summarized:

> The Board found that Professor Wax engaged in 'flagrant unprofessional conduct' that breached her responsibilities as a teacher to offer an equal opportunity to all students to learn from her.  That conduct included a history of sweeping, blithe, and derogatory generalizations about groups by race, ethnicity, gender, sexual orientation, and immigration status; breaching the requirement that student grades be kept private by publicly speaking about the grades of law students by race and continuing to do so even after being cautioned by the dean that it was a violation of University policy; and by, on numerous occasions in and out of the classroom and in public, making discriminatory and disparaging statements targeted at specific racial, ethnic, and other groups with which many students identify.  *Id.* at 49.

Plaintiff then appealed her case to the University-wide Senate Committee on Academic Freedom and Responsibility ("SCAFR"), which upheld the decisions by the Hearing Board and President Magill.  Am. Compl. Ex. at 62-63 (Senate Committee on Academic Freedom and Responsibility Report).  In accordance with the Hearing Board's recommendation, Penn's Provost, John L. Jackson, drafted a letter of public reprimand.  In September 2024, Provost Jackson's letter, along with a statement from the President's office "describing the case and its disposition," was

published in the *Almanac*, as is required by the Handbook.  Am. Compl. Ex. at 66-69 (Publication of Sanctions against Professor Wax Online).  Penn's sitting President, Larry Jameson, also published President Magill's full decision in the *Almanac*.  *Id.*

## III.  PROCEDURAL HISTORY

Plaintiff claims breach of contract, racial discrimination under Section 1981, Title VI and Title VII, and false light invasion of privacy.[3]  *See generally* Am. Compl.  On March 13, 2025, Defendant filed a Motion to Dismiss the Amended Complaint, which is presently pending before the Court (ECF No. 26).

On March 14, 2025, Plaintiff filed the present Motion for Preliminary Injunction (the "Motion") (ECF No. 27).  Plaintiff asks this Court to enjoin Penn from "implementing the final decision imposing sanctions against [her], specifically: (1) refrain from requiring [her] to adhere to the Speech Policy or face further sanctions; (2) refrain from suspending [her] for the 2025-2026 academic year; and (3) restore Professor Wax's named chair."  *See* Motion at 1.

## IV.  ARGUMENT

As the Third Circuit has recently confirmed, "a preliminary injunction is an extraordinary and drastic remedy" that requires "great caution."  *See Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 199, 202 (3d Cir. July 15, 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  "A court should not grant an injunction unless the plaintiff's right is clear, [her] impending injury is great, and only an injunction can avert that injury."  *Id*. at 200.  The Plaintiff

---

[3] Plaintiff's Amended Complaint also asserted a claim for disability discrimination under the Americans with Disabilities Act, which has since been withdrawn.  *See* Plaintiff's Notice of Voluntary Dismissal with Prejudice as to Certain Claim (Count VI), ECF No. 30.

bears the ultimate burden of making "a clear showing" of her entitlement to such preliminary relief. *Id*. at 202 (citation omitted).

This requires Plaintiff to demonstrate that (1) she will likely succeed on the merits; (2) she will suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 609 (3d Cir. 2024). Of these factors, the first two factors are the "most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Only if the first two are present should a court consider the remaining factors. *Id.* at 435.

As demonstrated below, Plaintiff cannot establish that any of the four factors are met, much less that, taken as a whole, they entitle her to this extraordinary remedy she seeks.

A.    **Plaintiff Has Failed to Demonstrate That She Is Likely to Succeed on the Merits of Her Claims**.

A failure to establish a likelihood of success on the merits is fatal to a plaintiff's request for preliminary injunctive relief. *See Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Here, for the reasons discussed in Penn's motion to dismiss, Plaintiff has failed to state a claim on all of her counts.[4] And, even if Plaintiff's case survives dismissal, she is still unlikely to succeed on the merits, as there is no evidence to establish the essential elements of her claims. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 327 (1986).

1.    **Plaintiff Is Not Likely to Succeed on Her Breach of Contract Claim**.

Plaintiff advances two theories in support of her breach of contract claim: (1) Penn supposedly breached Plaintiff's "contractual First Amendment rights" and (2) Penn breached its

---

[4] Defendant incorporates by reference all arguments related to Plaintiff's failure to state a claim from its Memorandum of Law in Support of its Motion to Dismiss (ECF No. 26).

obligation to provide Plaintiff with a "fair process in the disciplinary proceedings." *See* Motion at 6-7. Plaintiff cannot succeed on either theory.

*First*, Plaintiff's claims related to a breach of her "contractual First Amendment rights" fail because there is no "First Amendment right" at issue in this case. Plaintiff is unable to point to *any provision* of any applicable contract, including the Handbook, that guarantees Plaintiff, a professor at a private university, actual First Amendment protections. *Hurley v. Irish-Am. Gay Grp. Of Bos.*, 515 U.S. 557 (1995) (The First Amendment guarantees freedom of expression against infringement by the state, not by private actors).[5]

Attempting to construct a First Amendment obligation where none exists, Plaintiff cites to Penn's Open Expression Policy and statements made by former Penn President Magill during a congressional hearing on December 5, 2023. This too fails. Neither the Open Expression Policy nor President Magill's statements are sufficiently definite to create an enforceable obligation, much less an obligation to abide by the First Amendment. *See* Def.'s Mot. to Dismiss at 19-21. The Open Expression Policy does not even use the terms "First Amendment" or "Constitution." *See* Am. Compl. Ex. 78-83. *See, e.g.*, *Fakhreddine v. Univ. of Pa.*, No. 24-cv-1034, 2025 WL 345089, at *7 (E.D. Pa. Jan. 30, 2025), *appeal filed*, No. 25-1290 (3d Cir. Feb. 20, 2025) (dismissing a breach of contract claim premised on Penn's Guidelines on Open Expression, noting that it was "mere 'aspirational' language not sufficiently definite to create an enforceable obligation.") (citations omitted).

---

[5] In fact, during a recent interview Plaintiff admitted that the First Amendment did not apply to private Universities such as Penn and that she did not have a direct First Amendment claim against Penn. *See* The Ayaan Hirsi Ali Podcast, *Bring Back Bourgeois Virtues - Amy Wax*, YouTube (Nov. 3 2024), https://www.youtube.com/watch?v=4O_oeRCuN0c (discussing the First Amendment's application to private universities at 5:07-6:45 and 25:25-28:25.)

Additionally, Plaintiff mischaracterizes President Magill's testimony in her Complaint. President Magill did not testify that Penn's policy is "substantively identical to and governed by the First Amendment to the United States Constitution." Am. Compl ¶ 126. On the contrary, as reflected in the transcript of the actual testimony, President Magill stated only that Penn's policies are "*guided by* the United States Constitution."[6] Looking to the constitution for guidance is quite different from creating a constitutional right. Whatever guideposts the University uses to evaluate conduct and speech of faculty members, this is not a constitutional case, nor does it implicate a First Amendment right on behalf of a professor at a private university.

*Second*, Penn did not breach any obligation to provide Plaintiff with the procedures guaranteed by the Handbook. *See* Mot. to Dismiss at 16-19. Under Pennsylvania Law, courts review a breach of contract claim involving a university handbook as it would any other private agreement between two parties. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 428 (Pa. 2001). Therefore, the analysis is limited to whether the decision to sanction Plaintiff complied with the contractually defined procedures. In other words, while Plaintiff may disagree with the ultimate *decision* made by the Hearing Board, the Handbook guarantees a *process,* not a *result.*

Here, Plaintiff received the process to which she was entitled, and there is no evidence to suggest otherwise. President Magill's decision upholding the Hearing Board Report provides a lengthy recitation of all the procedures followed in accordance with the Handbook, none of which are contested by Plaintiff. Am. Compl. Ex. at 48-55.[7] In support for her claim that she was not

---

[6] The full transcript of the congressional hearing and President Magill's actual testimony is publicly available. *See Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. & the Workforce*, 118th Cong. (2023), https://perma.cc/3JA8-XVG3.

[7] Defendant's Motion to Dismiss provides an in-depth explanation of all the Handbook procedures followed. *See* Mot. to Dismiss at 16-19. In subsequent discovery efforts, Plaintiff has failed to identify

provided a "fair" disciplinary hearing, Plaintiff cites to a letter by a former member of SCAFR, that expresses his view on perceived errors in the disciplinary process.  *See* Motion at 7-8.  This letter, however, shows that SCAFR was aware of and considered Plaintiff's objections yet still found no procedural defect.  In fact, both President Magill and SCAFR received comprehensive written objections from Plaintiff detailing all of her perceived grievances.  Am. Compl. Ex. at 48-55.  After reviewing the complete record and those objections, President Magill and SCAFR independently concluded that the Handbook's procedures were followed.  Accordingly, Plaintiff's contract claims fail as a matter of law, and also because she can offer no evidence to substantiate that Penn did not comply with the procedures established by the Handbook.  *See, e.g.*, *Baker v. Lafayette Coll.*, 350 Pa. Super. 68 (1986), *aff'd*, 516 Pa. 291 (1987) (granting summary judgment as undisputed facts showed college's full compliance with process of evaluation and appeal of professor's termination as was laid out in parties' contract).

### 2.    Plaintiff Is Not Likely to Succeed on Her Discrimination Claims.

Plaintiff asserts discrimination claims under Title VI, Title VII, and Section 1981.[8] Specifically, she contends that she was discriminated against because of the "racial content of [her] speech."  Am. Compl. ¶ 136.  Plaintiff also asserts a fallback allegation that she was discriminated

---

any other provisions of the Handbook that have been breached.  *See* Plaintiff's Am. Objs. and Resps. to First Interrogs. ("Plaintiff's Interrogatory Responses"), at p. 8-9, attached as Exhibit A.  For example, Plaintiff contends that Penn violated the Handbook by charging her with a major infraction even though (in her opinion) her conduct did not fit "the Handbook's contractually binding definition" of a major infraction. *Id.*  The Handbook's definition of major infraction, however, includes "a flagrant disregard of the standards, rules, or mission of the University," which is exactly what was charged.  Am. Compl. Ex. at 11, 19 (charging Plaintiff with a "flagrant disregard of the standards, rules, or mission of the University").

[8] As Plaintiff concedes, the analysis under all three statutes is the same.  *See* Mot. at 10; *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) ("The standard for establishing an intent to discriminate on the basis of race is identical in the Title VI and § 1981 contexts.") (internal quotations omitted).

against because of her identity as a white, Jewish woman. Am. Compl. ¶ 25, 36. Plaintiff cannot succeed on either theory.

Plaintiff's first theory fails because Section 1981, Title VI, and Title VII prohibit discrimination against an employee "because of" *that* individual's race. 42 U.S.C. § 2000e-2(a); *see also* Mot. to Dismiss at 21-24. As the Supreme Court has instructed, the relevant inquiry is a "but for" test for certain employment decisions based on *that* individual's protected characteristic – in this case, race. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020) (explaining that discrimination is when an employer "intentionally treats a person worse *because of* sex [or race]," such as "by firing the person for actions or attributes it would tolerate in an individual *of another* sex [or race]") (emphasis added). Put simply, federal law prohibits discrimination based on a **person's race**, not a person's **statements about race**.

This must be the case. If Title VII protected statements about race, then an individual terminated for making racially hostile remarks to colleagues could assert a Title VII claim in his defense, arguing that the statute protects his "speech." This interpretation would place Title VII "at war with itself," given that Title VII protects employees from racially harassing speech and conduct. *See Groff v. DeJoy*, 600 U.S. 447, 472 (2023); *see also Bryant v. Wilkes-Barre Hosp. Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015) ("The scope of protection provided by Title VII includes protection against a hostile work environment that is abusive to an employee on the basis of his or her race.") (citation omitted).

Plaintiff's second theory, that she was disciplined because of her white, Jewish identity, also fails. To prevail on a claim of race discrimination, a plaintiff must establish that she suffered an adverse employment action "under circumstances that could give rise to an inference of intentional discrimination" on the basis of her race. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir.

2008); *see also Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999) (requiring plaintiff who alleged reverse race discrimination to present "sufficient evidence to allow a reasonable fact finder to conclude…that the defendant treated plaintiff less favorably than others because of his race") (internal quotations and citation omitted).

Here, Plaintiff is unable to establish that her discipline occurred under any circumstances giving rise to an inference of discrimination. Plaintiff has not offered any direct evidence that the decisionmakers in this case (Dean Ruger, the members of the Hearing Board, President Magill or the members of SCAFR) harbored any animus against Plaintiff because of her racial identity. *See* Mot. to Dismiss at 25.

Plaintiff's attempted reliance on circumstantial evidence also fails. While discrimination may sometimes be inferred from circumstantial comparator evidence, that is only true when the proffered comparators are "similarly situated in all material respects." *Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024) (internal quotations and citation omitted). No such comparison is appropriate here. Plaintiff points to a handful of individuals of "various other non-White races and ethnicities" whom she alleges were "not punish[ed] [for] antisemitic speech." *See* Mot. at 9. But these other scenarios are utterly irrelevant to the claims asserted in this case.

None of the individuals identified by Plaintiff are legitimate comparators. Of the eight people named in her Complaint, only three (Anne Norton, Julia Alekseyeva, and Huda Fakhreddine)[9] are professors who would be subject to the same faculty standards as Plaintiff. *Id.*

---

[9] Moreover, in order to be a proper comparator, Plaintiff must allege that she was treated differently than individuals of *non-white and non-Jewish* identities. She failed to identify the race of many proposed comparators in her Complaint (*See* Mot. to Dismiss at 28), and the available evidence indicates that several of the proffered comparators (e.g., Professor Norton and Professor Alekseyeva) are not even a different race than Plaintiff. *See, e.g.*, *Oksona Mironova, Soviet Daughter: An Interview with Julia Alekseyeva, Lilith* (Feb. 24, 2017) (Prof. Alekseyeva describing her "Jewish identity" as "an ethnic identity"), https://tinyurl.com/memnhn5k.

("An employee who holds a different job title…is not similarly situated."). None are faculty in the Law School, meaning that their comments were not within the purview of the Law School Dean who initiated the charges against Plaintiff. *Id.* ("An employee who works in a different department…is not similarly situated."). Moreover, the comments were not within the scope of the evidence considered by the Hearing Board for a very simple reason: the supposedly anti-Semitic comments were made after the October 7, 2023 Hamas attack on Israel. The Hearing Board's report, however, was issued months earlier, in June 2023. Thus, there is no basis to accuse the Law School Dean or the Hearing Board of discrimination in treating Plaintiff differently from other faculty members in other schools at Penn.[10]

Additionally, none of the conduct by the purported comparators was materially similar to the inappropriate and offensive comments made by Plaintiff. Plaintiff was disciplined after a *years-long* escalation of her conduct, including personally demeaning and offensive comments made directly to students and faculty members over at least a five-year period. Am. Compl. Ex. at 28. On the other hand, the alleged actions by her proffered comparators are largely limited to isolated political statements relating to the Israel-Hamas conflict or other current events, not Penn students or faculty. *See* Mot. to Dismiss at 29-30.

In sum, Plaintiff cannot identify any comparator who is substantially similar to her in all material respects. Without any direct or circumstantial evidence, her discrimination claims will fail. *See Davis v. City of Phila. Water Dep't*, 57 F. App'x 90, 92 (3d Cir. 2003) (affirming summary judgment on behalf of a defendant-employer in Title VII case because none of the plaintiff's comparators engaged in the "same conduct" as the plaintiff and explaining that a proper

---

[10] Many of the comments by other faculty members were allegedly made after the October 7, 2023 Hamas attack on Israel. *See* Am. Comp. at ¶ 88-98. The Hearing Board, however, heard testimony in May 2023, and it issued its report on June 21, 2023.

comparator must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.") (citation omitted).

### B.    Plaintiff Cannot Show Imminent, Irreparable Injury.

Plaintiff argues that absent preliminary injunctive relief, she will suffer (1) ongoing reputational and professional harm and (2) constitutional harm from being required to adhere to the "illegal speech policy." *See* Mot. at 3-4. In both respects, Plaintiff does not meet her burden of showing irreparable injury. She cites no evidence to support her assertions of harm, and she cannot overcome the well-settled principle that courts strongly disfavor granting preliminary injunctions in the employment context when other remedies are available.

Irreparable injury exists when a plaintiff stands to suffer substantial harm that cannot adequately be compensated by a "legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). A "preliminary injunction must be the ***only*** way of protecting the plaintiff from harm. *Id.* (emphasis added). As the Supreme Court has further explained: "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Movants must also establish that irreparable harm is *likely* (not just possible) and that it is imminent. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Punnett v. Carter*, 621 F.2d 578, 586 (3d Cir. 1980).

The failure to satisfy this factor is dispositive. *Com. of Pa. ex rel. Creamer v. U.S. Dep't of Agric.*, 469 F.2d 1387, 1388 (3d Cir. 1972) ("A finding of no irreparable harm is itself sufficient to uphold the district court's denial of a preliminary injunction[.]"). Accordingly, the Court can

deny the Motion on this basis alone even if there is some question about the likelihood of success on the merits.

### 1. Economic Harm Cannot Constitute Irreparable Injury.

As an initial matter, injunctive relief is rarely available in employment and contract cases because irreparable harm is "of a peculiar nature" for which "compensation in money alone cannot atone." *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (citation omitted). It is well-settled that monetary harms generally do not qualify as irreparable harm for purposes of an injunction. *See Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987) ("[W]e do not believe that loss of income alone constitutes irreparable harm.").

Plaintiff's sweeping Motion seeks to enjoin Defendant from "implementing the final sanctions against her." *See* Mot. at 1. While Plaintiff has not pointed specifically to monetary harm as a basis for her motion, her request seems to include relief from the "final sanctions against her," which presumably includes its economic consequences (such as the loss of summer pay and her one-year suspension at half pay). These harms can be adequately remedied after trial and are therefore not a basis to establish irreparable injury. *See, e.g.*, *Porrata v. Pa. Interscholastic Athletic Ass'n*, 38 F. Supp. 3d 549, 588 (E.D. Pa. 2014) (denying motion for preliminary injunction to lift a year-long suspension of a wrestling coach because "it is possible to calculate [plaintiff's] damages" resulting from "loss of employment" and, specifically, "the effects of the sanctions and the loss of that one year . . . on any wages he would receive in future employment").

### 2. Plaintiff Has Failed to Prove Any Reputational Harm, Much Less That Such Harm Is Imminent and Irreparable.

Unable to rely on economic harm as a basis to enjoin the sanctions, Plaintiff is left only with her alleged "reputational" injury if she is not permitted to teach classes over the next two semesters. *See* Mot. at 21. This argument fails for three reasons. *First*, Plaintiff provides no

evidence whatsoever to suggest that the imposition of sanctions will cause her any reputational harm. *Second*, even assuming Plaintiff's reputation may be harmed in some way when the final sanctions take effect, she has failed to prove that such injury is imminent and irreparable, such that it warrants injunctive relief. *Third*, even if the Court were to grant an injunction, doing so would not avoid the alleged harm to Plaintiff's reputation.

### a.  *Plaintiff Offers No Evidence of Her Alleged Reputational Injuries*.

Plaintiff bears the burden of proving the alleged harm she will suffer without an injunction. To do so, she must offer actual evidence, not speculation or conclusory allegations. *See Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (indicating movant's burden to demonstrate "clear showing of immediate irreparable injury"); *Parra v. U.S. Parole Comm'n*, No. CV 05-321, 2005 WL 8174431, at *2 (W.D. Pa. Dec. 15, 2005) (noting movant's burden to prove irreparable injury that "is actual and imminent," not "remote or speculative") (citation omitted).

Here, Plaintiff has failed to provide ***any*** evidence of the harms she claims she will suffer as a result of the sanctions. The entirety of the "support" offered for her irreparable injury argument is one paragraph on page 13 of her motion, in which she cites paragraph 86 of her Amended Complaint. *See* Mot. at 13. Paragraph 86 describes (1) an alleged incident in which her appearance on a Binghamton University radio station was cancelled and (2) an alleged incident where "a number of student organizations at Yale ***attempted*** to cancel an appearance and speech by Professor Wax."[11] *Id.* (emphasis added). Plaintiff does not explain, however, what leads her to believe that the one cancellation and a second "attempted cancellation" were the result of the

---

[11] Notably, Plaintiff has since admitted that "Yale Law School permitted Plaintiff to speak," which itself undermines her claim of reputational harm. *See* Pl.'s Interrog. Resps. At p. 11-12, attached as Exhibit A.

impending sanctions, as opposed to her publicly reported speech and reputation as a self-described racist,[12] or even the discipline process and outcome.  The impact of the latter exists regardless of the pending sanctions.

Critically, Plaintiff attaches no documentation to her current Motion or the Amended Complaint to support her narrative account of these incidents.  Nor does she explain how the alleged loss of a single opportunity to be interviewed by a college radio station in upstate New York is the kind of irreparable injury that is likely to be repeated and warrants an intrusion by the Court into Penn's academic disciplinary process.

Moreover, Plaintiff has utterly failed to prove that any alleged "reputational harm" stems from the ***University's implementation of sanctions*** and not because of Plaintiff's own conduct or events that have already transpired.  Needless to say, Plaintiff's reputation – such that it is – is one that she has cultivated zealously.  For at least the last decade, Plaintiff has promoted her controversial image through speaking engagements and media appearances in which she publicly disparaged students and others based on their race, gender, national origin and sexual orientation. She has received national media attention and public condemnation for these appearances, which have made her a pariah in some circles and a celebrity in others.  To the extent that there have been any "cancellations of interviews and speeches" (again, she offers no evidence for this in her Motion), it is far more likely due to Plaintiff's own conduct and statements, rather than the fact of her discipline.  Plaintiff bears the burden of proof on this point, and she has failed to satisfy it.

Finally, to the extent that Plaintiff's reputation has arguably been harmed by the Hearing Board's determinations and the acceptance of the Hearing Board's recommendations by the University President, a preliminary injunction cannot be expected to alter that landscape.  The

---

[12] Am. Compl. Ex. at 23.

findings are already public and have been reported widely. In the wake of years of publicity attached to Plaintiff's controversial remarks, hardened views have been formed across the spectrum of ideas and philosophy. It seems that some observers view Plaintiff as a champion of free speech on a difficult subject, and they continue to invite Plaintiff to lecture and participate in discussions about these topics.[13] Others, like the tenured Penn faculty members who heard the charges and considered all of the evidence, as well as countless members of the University community, view Plaintiff's conduct as offensive, hurtful, belittling, and wholly inappropriate for a teacher in the Law School. None of that can be expected to change if the final steps of the sanctions are deferred pending the conclusion of the litigation, as Plaintiff requests.

Plaintiff does not even attempt to explain how an interim injunction returning her to the classroom while her claims are being litigated will avoid future reputational harm. First, doing so would neither overturn the Hearing Board's findings nor erase the public record of Plaintiff's offensive comments. Second, she does not explain how returning to the classroom would be

---

[13] In the circles where she is celebrated, Plaintiff's reputation has not been harmed by the Hearing Board's determinations or the issuance of sanctions. In the months since the Hearing Board's decision was published, Plaintiff has maintained an active calendar of speaking engagements and public appearances, in which she often touts the sanctions and her contempt for the University. *See, e.g.*, Intercollegiate Studies Institute, *The Future of Conservatism in America*, YouTube (Nov. 2024), https://www.youtube.com/watch?v=2P4HkjNAUNQ (featuring Amy Wax as a speaker; Ricochet.com, *Unsafe with Ann Coulter: Amy Wax*, YouTube (Dec. 11, 2024), https://www.youtube.com/watch?v=QRDJU6X1GW8 (discussing sanctions); The Harvard Salient, *Amy Wax, Jeremy Carl, Garett Jones, Simon Hankinson | Immigration, The Border, & American Identity*, YouTube (Feb. 8, 2025), https://www.youtube.com/watch?v=S0EURoS1Ovw (featuring Plaintiff as speaker on panel at Conservative and Republican Student Conference); The Glenn Show (Glenn Loury), *A Blow against Free Speech at Penn Law*, YouTube (March 2, 2025), https://www.youtube.com/watch?v=-KYLIAr7I9c; Whither the Loonversity (Adam Ellwanger), *Dr. Amy Wax, Robert Mundheim Professor of Law, U of Penn*, YouTube (March 6, 2025), https://www.youtube.com/watch?v=nyQgx8XiOUU; Thales College, *"School Choice: A Vehicle for Constructive and Meaningful Citizenship" from Professor Amy Wax*, YouTube (April 9, 2025), https://www.youtube.com/watch?v=udNhSUog2DA (giving keynote address at Liberty & Literacy Forum).

publicized beyond the small group of students who elect to take her classes such that it could even resolve any of her alleged reputational concerns. [14]

In short, Plaintiff's conclusory, speculative allegations of harm do not satisfy her burden of proving irreparable injury that can be avoided only by the entry of an injunction before a disposition on the merits. *See Porrata*, 38 F. Supp. 3d at 588 (denying suspended wrestling coach's motion for preliminary injunction and rejecting claim of reputational injury, noting that he "did not introduce any credible evidence that he has suffered or will suffer a loss of reputation if the [] sanctions remain in effect."); *Cath. High Sch. of Diocese of Pittsburgh, Inc. v. Fed'n of Pittsburgh Diocesan Tchrs.*, No. 2:21-CV-1808-RJC, 2022 WL 3867905, at *5 (W.D. Pa. Aug. 30, 2022) (denying motion for preliminary injunction and noting that while movant had "invoke[ed] reputational harm and humiliation, [he did] not substantiate that harm with any evidence."); *see also Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006) (finding that plaintiff failed to establish irreparable harm where he "offered no documents, statements, or testimonials demonstrating that he has suffered harm to his reputation as a result of [a] press release, or that such harm is certain to continue if the court does not impose an injunction"); *Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) ("The Court will not credit Plaintiff's bald assertions regarding reputational harm and employment consequences without any support.").

---

[14] *See e.g.*, Tat Bellamy-Walker, *Penn Law to sanction professor who said U.S. 'better off' with fewer Asians*, NBC News (Jan. 20, 2022), https://tinyurl.com/e297ktkj (describing backlash against Plaintiff, including her 2022 comment that "I think the United States is better off with fewer Asians and less Asian immigration.").

b.       *Plaintiff's Alleged Reputational Injuries Are Not Irreparable*.

Even if Plaintiff had offered some evidence of harm (she has not), she nonetheless fails to demonstrate, as a matter of law, that the claimed injuries warrant injunctive relief.  There are two professional injuries that Plaintiff contends she will experience if the sanctions are not enjoined: (1) interference with her teaching and "cutting her off" from her students, and (2) harm to her "professional reputation."  *See* Mot. at 13-14.  Neither of these injuries is the type of irreparable harm that warrants injunctive relief.  *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 410 (E.D. Pa. 2016) ("The requisite feared injury or harm must be irreparable—not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it.") (quoting *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

First, Plaintiff will not be harmed irreparably by a one-year suspension from teaching.  As Plaintiff is well-aware, it is common in the academic community, including at Penn, for tenured professors to take leaves of absence from teaching for both academic and personal reasons.  *See* Declaration of Theodore Ruger, attached as Exhibit. B at ¶¶ 8-18.  Plaintiff took advantage of Penn's scholarly leave/sabbatical policy, including just a few years ago when she applied and was approved for a yearlong sabbatical from teaching during the 2019-2020 academic year.  *Id.* at ¶¶ 19-21.  Accordingly, she cannot genuinely claim that she will be irreparably injured by not teaching for a year.

This leaves only the vague references to harm to Plaintiff's "professional reputation."  This harm also does not warrant injunctive relief.  The Third Circuit has cautioned that non-economic injuries, such as reputational harm or loss of goodwill, seldom rise to the level of irreparable harm for the purposes of a preliminary injunction.  *See Del. State Sportsmen's Ass'n*, 108 F.4th at 201 ("Only when the threatened harm would impair the court's ability to grant an effective remedy is

20

there really a need for preliminary relief…[m]uch more often, though, ***even nonpecuniary injury does not rise to that level***.") (emphasis added) (citation omitted).

Unsurprisingly, all of the cases Plaintiff cites are distinguishable, primarily because they do not discuss reputational harm in the context of employment cases.  *See Vonderheide v. Harrisburg Area Cmty. Coll.*, No. 19-3096, 2019 U.S. Dist. LEXIS 183254, at *27–28 (E.D. Pa. Oct. 23, 2019) (finding that plaintiffs had proven irreparable reputational harm when, as part of an ongoing **interpersonal dispute**, a defendant published a website falsely accusing the plaintiffs of physically and emotionally abusing their children); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014) (finding in a ***false advertising*** case that a plaintiff had offered sufficient evidence to demonstrate that false advertising about a product would cause irreparable reputational injury); *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 333 (D.N.J. 1997) (finding, in a ***trademark infringement action***, that a competitor's infringement of a trademark would cause consumer confusion, leading to reputational damage).

On the other hand, the overwhelming weight of authority indicates that in the ***employment context***, reputational injury is almost always insufficient to constitute imminent, irreparable harm. This makes sense because in nearly every employment case, there is always the potential that a plaintiff's professional reputation could be impacted by a termination, disciplinary measure, or demotion.  Nevertheless, courts routinely find that attendant reputational harms do not warrant the extraordinary remedy of a preliminary injunction.  *See, e.g.*, *Shea v. Mountain View Sch. Dist.*, No. 14-01189, 2014 WL 3590006, at *6 (M.D. Pa. July 21, 2014) (denying petition to enjoin a superintendent's employment contract and noting that the claimed "reputational impairments," even if valid, were not "irreparable harm for preliminary-injunction purposes"); *Roberts v. City of Philadelphia*, No. 96-4154, 1996 WL 472412, at *2 (E.D. Pa. Aug. 20, 1996) (denying former

employee's motion for preliminary injunction because "damages for injury to reputation" are calculable damages that may be compensated monetarily); *Golovan v. Univ. of Del.*, No. 13–862–RGA, 2013 WL 4724990, at *1 (D. Del. Sept. 3, 2013) (rejecting a professor's claims that he would be irreparably harmed by professional stigma if he was not reinstated); *Bagley v. Yale Univ.*, No. 3:13-CV-1890 CSH, 2014 WL 7370021, at *10 (D. Conn. Dec. 29, 2014) (Yale professor denied injunction, noting "[i]t is equally clear from the cited cases that ***damage to a plaintiff's reputation in his or her chosen field does not constitute irreparable harm, in the sense that it cannot be compensated by money damages at trial. There is nothing surprising about that: for centuries, the common law of defamation has afforded plaintiffs damages for loss of reputation****.")(emphasis added).

In fact, the consequences to Plaintiff's reputation *in this instance* are *less* severe than in most employment cases where plaintiffs typically have to find a new job.  Here, Plaintiff remains tenured, and she enjoys unparalleled levels of job security when compared to the typical plaintiff. Therefore, her claimed reputational injury does not warrant injunctive relief.

### c.    *Injunctive Relief Will Not Remedy the Alleged Reputational Injury.*

Even if Plaintiff had established an irreparable injury, a preliminary injunction is still not appropriate in this case because it would not stop the alleged harm.  *Del. State Sportsmen's Ass'n*, 108 F.4th at 200 (holding that a "court should not grant an injunction unless…an injunction can avert [the] injury.").  As Plaintiff must concede, the sanction at issue here has already been imposed in part, and it has received considerable media attention.[15]   Consequently, even assuming that

---

[15] *See, e.g.*, Vimal Patel and Stephanie Saul, *Penn Suspends Amy Wax, Law Professor Accused of Making Racist Comments,* Amy Chang and Abby Crux, New York Times (Sep. 23, 2024), https://tinyurl.com/5n8c865x; Emily Chang and Abby Cruz, *Penn imposes major sanctions against*

Plaintiff's reputation has been harmed by the issuance and announcement of sanctions, enjoining the sanctions at this stage would be an ineffective remedy to any harm. *See Cath. High Sch. of Diocese of Pittsburgh, Inc.*, 2022 WL 3867905, at \*5 (finding that an injunction requiring a teacher accused of sexual misconduct to return to his teaching position would "not change the fact that [the] complaints [against him] remain pending…It is therefore not clear that a preliminary injunction would remedy any reputational harm that [he] has already suffered.").

If Plaintiff genuinely believed that her reputation was going to be irreparably harmed by the *announcement* of sanctions, she could have sought a preliminary injunction before their publication. She chose not to do so.[16] *See, e.g.*, *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 627 (M.D. Pa. 2001) (discussing that a delay in bringing a preliminary injunction can preclude a grant of injunctive relief because doing so "clearly belied any claim of irreparable injury"). Her belated request for relief – a full year after the sanctions were approved by the Faculty Senate Committee on Academic Freedom and another eight months after the sanctions were publicly announced – is as untimely as it is misguided.

### 3.    Plaintiff Can Not Presume Irreparable Injury from Alleged Violations of Her Civil or Contractual Rights.

Plaintiff's only remaining claim is that she will suffer irreparable harm because of injury to her "civil rights" and "contractual First Amendment rights." *See* Mot. at 14. Defendant did not

---

*controversial law professor Amy Wax, including a 1-year suspension*, ABC News (Sep. 24, 2024), ABC News, https://tinyurl.com/3nv2vawh.

[16] Plaintiff was made aware of SCAFR's final decision to uphold the Hearing Board's report on May 29, 2024. Am. Compl. Ex. 62-64 (letter from SCAFR to Interim President Jameson, copying Amy Wax). Provost Jameson did not publicly publish the decision in the *Almanac* until September 24, 2024. Am. Compl. Ex. 66. Therefore, Plaintiff knew of the final results of the sanctions *months before* the publication. If she felt her reputation would have been damaged by the implementation of the sanctions, she could have sought a preliminary injunction during that time. She did not.

violate any of Plaintiff's contractual or civil rights, but regardless, irreparable injury cannot be shown even if the claims were otherwise considered to be meritorious.  First, as the Third Circuit has held, harm cannot be presumed merely because an employee complains of alleged discrimination.  Second, Plaintiff cannot claim any presumed constitutional harm for First Amendment violations because she ***does not have a First Amendment claim***.  No matter how she attempts to masquerade it, Plaintiff has pled only a breach of contract claim against Defendant and is entitled only to contract damages.

Plaintiff is mistaken in suggesting that "the Third Circuit has presumed that irreparable injury will result from a Title VII violation." *See* Mot. at 14.  Plaintiff's singular citation to *United States v. Philadelphia*, 573 F.2d 802, 807 (3d Cir. 1978) is misguided.  Indeed, two subsequent Third Circuit opinions have squarely rejected the contention "that irreparable harm will be presumed when private sector employees seek a preliminary injunction in Title VII employment discrimination cases." *Moteles v. Univ. of Pa.*, 730 F.2d 913, 918 (3d Cir. 1984) (distinguishing *United States v. Philadelphia*, 573 F.2d 802, 807 (3d Cir. 1978) and finding that a district court erred in granting a preliminary injunction in a Title VII case where the plaintiff had failed to demonstrate irreparable harm); *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987) ("We have previously rejected an argument that prejudice to the plaintiff should be presumed in all private Title VII actions.").  This, of course, must be the case or every Title VII plaintiff would seek injunctive relief.

Additionally, Plaintiff's attempt to reframe her contract claim as a First Amendment violation fails.  It is a bedrock principle that the First Amendment does not apply to private employers, such as Defendant. *Hurley*, 515 U.S. at 557.  Unsurprisingly, all of the authorities Plaintiff cites for the proposition that harm is presumed for First Amendment violations occurred

in the context of institutions bound by the Constitution. *See* Mot. at 14-15. Defendant is not "bound" by the First Amendment. Even if the University had incorporated First Amendment principles into its contract with faculty and then had breached that contract, Plaintiff would *still* suffer only a contractual injury for which she would be entitled to contractual damages. Put simply, as a private institution, Penn does not have the capability to violate Plaintiff's First Amendment rights. Therefore, Plaintiff is not entitled to the special category of presumed harm reserved for constitutional violations.

In sum, Plaintiff has not carried her burden on this factor. Because failure to satisfy the irreparable harm factor is dispositive of her motion, for this reason alone, the Court should deny the requested injunction.

C.    **The Balance of Equities and Public Interest Weigh in Defendant's Favor**.

Plaintiff has failed to show irreparable injury or likelihood of success on the merits. That alone forecloses her claim to injunctive relief. Nonetheless, an examination of both the balance of equities and the public interest show that injunctive relief is improper.

1.    **The Balance of Equities Weigh in Defendant's Favor**.

The balance-of-equities factor directs the Court to evaluate "the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." *Garrett v. Am. Fed'n of State, Cnty. & Mun. Emps. AFL-CIO*, 726 F. Supp. 3d 404, 414 (E.D. Pa. 2024). "[T]he injunction usually will be refused if the balance tips in favor of defendant." *Id.* (citation omitted). Here, Plaintiff makes virtually no argument explaining how the equities weigh in her favor. Instead, in conclusory fashion, she merely reiterates her argument that she will be irreparably harmed. First, by "merging" these factors, Plaintiff has failed to carry her burden. *See* Mot. at 15; *see also Clayborn v. Distelrath*, No. CV

19-12971, 2019 WL 6003293, at *3 (E.D. Mich. Oct. 23, 2019), *R. & R. adopted*, No. 19-12971, 2019 WL 5964586 (E.D. Mich. Nov. 13, 2019) ("As the moving party, Plaintiff was required to address all four factors for injunctive relief with some degree of clarity and thoroughness.") (internal quotations and citation omitted).

Moreover, Plaintiff failed to engage in any actual "balancing" of the equities. Instead, she merely reiterates her belief that *she* will be harmed. This analysis entirely fails to consider how the equities impact Penn and the Penn community. Plaintiff was not disciplined arbitrarily. Rather, the Hearing Board issued sanctions based in large part on a finding that Plaintiff's conduct interfered with the access of students to an equal, respectful learning environment. Yet, Plaintiff does not weigh or even discuss these reasons for the discipline. Instead, she suggests that the Court should disregard the Hearing Board's justifications entirely – including the actual harm they found was caused to students and faculty – and instead focus only on the purported harm to Plaintiff. That is wrong.

The balance of equities favors Defendant. Most notably, an injunction would compromise the integrity of the peer-review disciplinary process outlined in the Handbook. Doing so would be an affront to Penn's academic self-governance and, specifically, the judgment reached by the Hearing Board, following a peer-review process, that Plaintiff's behavior created a "hostile learning environment" that detrimentally impacted equal access to educational opportunities. Penn must be allowed to fulfill its obligations to its community through its established and comprehensive faculty disciplinary process. Am. Compl. Ex. at 23, 26. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225-26 (1985) ("When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure

from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.").

Additionally, Plaintiff's blanket request that she be refrained from adhering to the "Speech Policy," a term of Plaintiff's own creation, is utterly vague and would only cause confusion. There is no mention of any "Speech Policy" in the sanctions recommended by the Hearing Board.[17]  In fact, the only "speech"-related sanction recommended by the Hearing Board is that Plaintiff must disclose "in her public appearances that she is not speaking for or as member of the Penn Carey Law School or the University of Pennsylvania."  Am. Compl. Ex. at 26.  There is no plausible harm to Plaintiff in making this disclaimer.  On the other hand, Penn bears the risk that anything Plaintiff says can be attributed to the University – a detrimental prospect given Plaintiff's history of incessant racist, sexist, xenophobic, and homophobic statements.  Allowing Plaintiff to speak on behalf of Penn risks the University's own reputation, compromises its mission to foster a respectful and inclusive learning environment, and also exposes the University to liability if Plaintiff's conduct creates a hostile work and learning environment.

### 2.    The Public Interest Favors Defendant.

An injunction preventing the University from implementing the remaining sanctions against Plaintiff would not serve the public interest.  Plaintiff makes the hollow argument that the public interest would be served by an injunction because "Penn's Speech Policy…harms not just

---

[17] In her Motion, Plaintiff cites to a part of Provost Jackson's reprimand letter which states: "It is imperative that you conduct yourself in a professional manner in your interactions with faculty colleagues, students, and staff. This includes refraining from flagrantly unprofessional and targeted disparagement of any individual or group in the University community. These directives will remain in effect for so long as you are a member of the University's standing faculty." Am. Compl. Ex. at 67-68. However, this is not part of her official sanctions as described by the Hearing Board and affirmed by President Magill. Therefore, this statement falls outside of the scope of Plaintiff's present Motion seeking to enjoin "implementing the final decision imposing sanctions against Professor Wax." See Mot. at 1.

Professor Wax but all those who are forced to abide by its race-based preferential system or face harsh disciplinary consequences."  But Plaintiff has not filed a class action or pursued a university-wide injunction of the supposedly harmful "Speech Policy."  She has only sought to enjoin sanctions imposed on her.  Therefore, she cannot rely on any supposed harm to the University at-large.

Finally, it would also not be in the public interest to allow a professor to bypass an internal university proceeding and run to the federal courts claiming she needs emergency relief.  The order Plaintiff seeks would do just that, setting the precedent for any disgruntled faculty member who disagrees with their discipline to seek court intervention.  This would impose a significant burden on judicial resources, as it would make the courts the ultimate arbiters of academic disputes. Courts have consistently rejected such invitations to second-guess academic processes and decisions, and for good reason.  *See, e.g.*, *Ewing*, 474 U.S. at 225-26; *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005) (recognizing "that scholars are in the best position to make the highly subjective judgments related with the review of scholarship and university service.").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction in its entirety.

Dated: May 19, 2025                MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Michael Banks*

Michael L. Banks (Bar No. 35052)
A. Klair Fitzpatrick (Bar No. 309329)
Arielle H. Steinhart (Bar No. 331886)
2222 Market Street
Philadelphia, PA  19103-3007
+1.215.963.5000
michael.banks@morganlewis.com
klair.fitzpatrick@morganlewis.com
arielle.steinhart@morganlewis.com

TUCKER LAW GROUP
Joe H. Tucker (Bar No. 56617)
1801 Market Street, Suite 2500
Philadelphia, PA  19103
+1.215.875.0609
jtucker@tlgattorneys.com

*Counsel for Defendants the Trustees of the*
*University of Pennsylvania*

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael L. Banks, hereby certify that on May 19, 2025, a true and correct copy of the

foregoing Defendant's Opposition to Plaintiff's Preliminary Injunction was filed electronically and

is available for viewing and downloading from the Court's ECF system.

*/s/ Michael Banks*
Michael L. Banks
