# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMY WAX, | |
| **Plaintiff,** | |
| v. | No. 2:25-cv-00269-TJS |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | |
| **Defendants.** | |

**PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES
TO FIRST SET OF INTERROGATORIES OF DEFENDANTS
THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA**

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Professor Amy Wax, by and through counsel, hereby submits the following written objections and responses ("Responses") to the First Set of Interrogatories of Defendants the Trustees of the University of Pennsylvania, served on March 27, 2025.

**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES**

1. Describe each and every source of income received by or accruing to you (other than from your employment at Penn) in response to these Interrogatories from March 2018 to the present, including, but not limited to, wages, unemployment compensation benefits, workers' compensation benefits, disability insurance benefits, and/or Social Security benefits, stating the total amount received from each and every source and the dates on which such amounts were received.

**RESPONSE**: Plaintiff objects to the Interrogatory to the extent it seeks information irrelevant to any claim or defense, specifically, Plaintiff's Social Security benefits.

5. Identify in specific detail each and every contract and contractual provision that you allege that Penn breached. By way of example, if you contend that Penn breached the terms of the Faculty Handbook, identify the specific provisions in the handbook which, you contend, were breached.

**RESPONSE**:

Plaintiff refers Defendants to her opposition to Defendants' motion to dismiss, which discussed in detail the contractual violations at issue. In particular, Defendants have breached the following contractual provisions:

- Provisions promising that Penn would respect freedom of speech and academic freedom, Faculty Handbook §§ II.A, II.C.1, V.1. Breached by punishing Plaintiff for the content of her speech on matters of public concern and the viewpoints expressed therein, in a manner inconsistent with First Amendment principles and with widely held academic freedom principles.

- Provisions specifying that tenured professors can only be suspended for major infractions and setting different procedures for adjudicating major and minor infractions, *id.* §§ II.E.16.1.B.7-10, II.E.16.2-4. Breached by applying the major infraction procedure and major infraction sanctions to Plaintiff for engaging in unpopular speech that does not fit the Handbook's contractually-binding definition of "major infraction." *See* Dkt. 31, 17-19.

- Provisions promising that internal disciplinary matters will be handled "fairly" and in a manner that "protects the rights of faculty," *id.* § II.E.16.1.A. Breached by various instances that violate fairness and due process during the proceedings, as listed in detail in the Complaint and Opposition to the Motion to Dismiss (Dkt. 31), at 20-22.

- Provisions promising accused professors "any . . . university documents that are relevant to the[ir] procedural or substantive rights," *id.* § II.E.16.4.E, and "the production of such documents as may be relevant," id. § II.E.16.4G. Breached by not providing Plaintiff documents concerning recusal issues of Hearing Board members and by behind-the-scenes attempts to bury the Rodriguez Report before it was eventually produced.

6. For each alleged breach identified in Interrogatory No. 6, describe in detail how Penn breached that contractual provision, and identify any contractually required procedure which you contend Penn did not follow in breach of the purported contract.

**RESPONSE**: Plaintiff objects to this Interrogatory. It is duplicative of Interrogatory 5 (which it ostensibly references as Interrogatory 6). Furthermore, the Interrogatory has two parts. Plaintiff's answer to Interrogatory 5 should cover the content intended to be elicited by this Interrogatory.

7. Identify each and every written or oral statement by which you contend Penn contractually agreed to "abide by the principles of the First Amendment" for its professors, as stated in Paragraph 28 of the Complaint.

**RESPONSE**:

The University President's testimony to Congress, both oral and as memorialized on the University website, that Penn's approach to speech is "guided by the U.S. Constitution" and "outlined in decades-old open expression policies." In her oral testimony, the President stated that "Antisemitism has no place at Penn, and our free speech policies are guided by the United States Constitution."

9

the Faculty Handbook, *see id.* § V.A., provide that Penn "affirms, supports and cherishes the concepts of freedom of thought, inquiry, [and] speech," and that "the freedom to hear, express, and debate various views; and the freedom to voice criticism of existing practices and values are fundamental rights that must be upheld and practiced by the University in a free society." Am. Compl. Ex. 14, at 78; *see also id.* ¶¶ 122-27. In total, the phrase "academic freedom" appears in Penn's Faculty Handbook dozens of times.

Plaintiff believes that there are many other instances in which Penn's president and other high-ranking administrators have made statements or writings indicating that Penn abides by the principles of the First Amendment, or otherwise indicating that Penn provides its tenured professors with real, enforceable protections of free speech and academic freedom. Plaintiff has served discovery requests designed to obtain evidence of such additional statements.

8. Identify each professional opportunity, including speaking engagements, outside of Penn for which you have been invited, appeared, sought to appear, or for which invitations have been rescinded since September 24, 2024, state whether you believe that the opportunity was withdrawn because of the discipline imposed by Penn, and describe the basis for that belief.

**RESPONSE**: Plaintiff believes that Penn's actions have caused severe harm to her professional reputation and she believes she has lost professional opportunities that would have otherwise been offered to her but for Defendants' actions. In terms of instances in which invitations were rescinded specifically because of Penn's sanctions, Plaintiff notes one occurrence since September 24, 2024, involving Binghamton University. The rescission was expressly due to the discipline imposed by Penn. The General Manager, who canceled the appearance, expressly stated that she did so pursuant to "harmful nature of Amy Wax's statements, which have led to the University of

11

Pennsylvania sanctioning her." Plaintiff was scheduled to be interviewed on the "The World According to Bob and Andy" show on Wednesday, October 30, 2024. It was canceled last-minute by vote of the student board.

Plaintiff was also invited to speak at Yale University in November of 2024. She faced substantial opposition by a coalition of student affinity groups, which issued a letter citing the University's sanctions against Plaintiff. Although Yale Law School permitted Plaintiff to speak, Plaintiff was painted as a bigot, and the student groups cited the University's proceedings as "well-documented history of Wax's bigotry."


9. Identify each statement that you contend Penn published about you that is not true, including the identity of the speaker, the content of the statement, the means by which it was published it, and the date on which the statement was made.

**RESPONSE**:

Plaintiff objects to the Interrogatory to the extent is attempts to go to the ultimate question of the false light claim. Plaintiff is bringing a false light claim, not a defamation claim. Under Pennsylvania's false light common law, published claims may be "literally true" but in the aggregate create a misleading overall impression to the average observer.

As noted in the Opposition to the Motion to Dismiss, Plaintiff believes Penn's final reports announcing the sanctions, which were published on September 24, 2024 to the world, "cherry-picked, misrepresented, or outright misstated certain statements by Professor Wax, the result of which was to portray Professor Wax" as "a virulent racist." See Am. Compl. ¶ 166. She further alleges that the publication "work[ed] to portray Professor Wax not only as a racist but a liar" by

Docusign Envelope ID: C9BCEAE2-50E0-47B2-A588-340A5F7614C6

## **Verification**

      I, Amy Wax, believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information, and belief.  I verify under penalty of perjury that the foregoing is true and correct.


Dated: _5/8/2025_____            Signed: _Amy Wax_____