# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY WAX | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA and | : | |
| BOARD OF TRUSTEES OF THE | : | |
| UNIVERSITY OF PENNSYLVANIA | : | NO. 25-269 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                    **June 23, 2025**

After a lengthy disciplinary process, the University of Pennsylvania ("Penn") found that longtime law professor Amy Wax had engaged in "flagrant unprofessional conduct." It imposed sanctions of a one-year suspension at half pay, loss of summer pay in perpetuity, loss of her named chair, and a public reprimand.

Wax brought this action asserting breach of contract (failure to adhere to the disciplinary process prescribed in the Faculty Handbook); racial discrimination under Title VI, Title VII, and 42 U.S.C. § 1981; and false light invasion of privacy. She seeks a preliminary injunction enjoining Penn from implementing the sanctions.

Because we conclude Wax will not suffer irreparable harm in the absence of a preliminary injunction, we shall deny her motion.

## Background

Wax joined the faculty of Penn Carey Law School as a tenured professor on July 1, 2001.[1] Five years later, she was named the Robert Mundheim Professor of Law.[2]

On March 2, 2022, Dean Theodore W. Ruger sent Wax a letter charging that she had "shown a callous and flagrant disregard for [the] University community" and inviting an informal resolution.[3] The letter cited the following instances of Wax's conduct:

- When asked by a Black student if she agreed with the claim that Black people are inherently inferior to white people, Wax responded: "You can have two plants that grow under the same conditions, and one will just grow higher than the other."

- Wax asserted on a panel that "our country will be better off with more whites and fewer nonwhites."

- Wax told the New Yorker that "women, on average, are less knowledgeable than men" and "less intellectual than men."

- Wax publicly described Black people as having "different average IQs" than people of other races, such that "Blacks are not going to be evenly distributed throughout all occupations" and that this phenomenon is "not due to racism."

- Wax asserted that "the United States is better off with fewer Asians" and that Asian people lack "thoughtful and audacious individualism."

- Wax told a Black colleague that it is "rational to be afraid of Black men in elevators."

- Wax, speaking on a panel with a gay colleague, asserted that "no one should have to live in a dorm room with a gay roommate," and separately stated that same-sex relationships are selfish and not focused on family or community.

- Wax stated on a podcast that she "often chuckle[s]" at advertisements that show interracial marriages because "[t]hey never show blacks the way they really are: a bunch of single moms with a bunch of guys who float in and out. Kids by different men."

- In an appearance on Tucker Carlson Today, Wax asserted that "Blacks" and other "non-Western groups" harbor "resentment, shame and envy" against Western people for their "outsized achievements and contributions even though, on some level, their country is a shithole."[4]

On June 23, 2022, after attempts at informal resolution failed, Dean Ruger requested the Chair of the Faculty Senate to convene a Hearing Board. The Chair began assigning faculty to the Hearing Board in June 2022.[5]

The Hearing Board conducted a three-day hearing on May 1-3, 2023.[6] On June 21, 2023, the Hearing Board published its report, finding that Wax had engaged in "flagrant unprofessional conduct."[7] The Hearing Board found that she was in dereliction

2

of her scholarly responsibilities, had violated privacy policies, and had not treated students with equitable due respect.[8] It recommended a one-year suspension at half pay, the loss of the named chair, the loss of summer pay in perpetuity, and a public reprimand.[9]

The Hearing Board sent its report to then-President Magill on June 21, 2023.[10] Magill issued her decision on August 11, 2023, upholding the proposed sanctions.[11]

Wax appealed to the Faculty Senate Committee on Academic Freedom and Responsibility ("SCAFR"), alleging procedural irregularities.[12] On May 29, 2024, SCAFR issued its report, finding no procedural defects.[13] On May 30, 2024, Provost Jackson sent Wax a draft reprimand, advising her that he would release it later that day.[14] Wax then met with Interim President Jameson.[15] Following that meeting on June 14, 2024, attorneys for Penn and Wax engaged in unsuccessful settlement negotiations.[16]

On September 23, 2024, in accordance with the sanctions, Provost Jackson sent a letter to Wax reprimanding her and advising her that the other sanctions recommended by the Hearing Board would be imposed.[17] Penn published the formal reprimand and made Penn's sanctions public that same day in its online campus newspaper.[18] On September 24, 2024, Interim President Jameson published Magill's letter and the SCAFR report on Penn's website.[19] SCAFR Member Jules van Binsbergen wrote a dissenting report, arguing that the procedure did not protect Wax's rights.[20]

Penn Carey Law School Dean Sophia Lee advised Wax that Penn was imposing the recommended sanctions.[21] Because Wax had already commenced teaching courses, including a year-long seminar, for the 2024-2025 academic year, the one-year suspension was delayed until July 1, 2025.[22]

**Analysis**

3

A preliminary injunction is an extraordinary remedy. *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). In determining whether to grant preliminary injunctive relief, we consider four factors: (1) the likelihood that Wax will succeed on the merits; (2) the threat of irreparable harm to her if an injunction is not granted; (3) whether granting an injunction will result in greater harm to Penn than Wax; and (4) whether injunctive relief will be in the public interest. *Smith v. City of Atl. City*, 138 F.4th 759, 779 (3d Cir. 2025). Only if the moving party demonstrates that she will likely succeed on the merits and will suffer harm if preliminary relief is not granted, do we consider and balance the remaining factors to determine if equitable relief is warranted. *See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024).

We may only grant preliminary injunctive relief upon a clear showing that irreparable harm is likely. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014). There must be more than a mere risk of irreparable harm. Wax must show that harm, which cannot be remedied after trial, is likely. *Delaware State Sportsmen's Ass'n, Inc.*, 108 F.4th at 204.

Wax argues we should presume irreparable harm because the Third Circuit has recently "presum[ed] that First Amendment harms are irreparable." *Id.* (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam)). This is not a First Amendment case. It is a breach of contract case.

Wax contends that two of the sanctions will result in irreparable harm – the one-year teaching suspension and the directive in Provost Jackson's public reprimand that

4

she "refrain[] from flagrantly unprofessional and targeted disparagement of any individual or group in the university community."

Wax claims the sanctions damage her reputation. As evidence of irreparable harm, she points to the cancellation of a scheduled radio appearance and an attempted cancellation of a speech at Yale. However, she has not shown any connection between those incidents and the sanctions.[23] She also has not shown that the cancellation and attempted cancellation were not simply a result of her more widely publicized views.

Wax must show that the harm is imminent. *Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017); *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Remote or speculative injury does not warrant an injunction. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263-64 (3d Cir. 2000).

Wax has failed to show that harm to her reputation is imminent. What effect the sanctions may have on her reputation has already occurred. She has been publicly disciplined and reprimanded. The sanctions have been publicized. Her suspension was announced. An injunction will not erase that record.

Wax's claimed harm to her career is speculative. She contends she will be prevented from engaging on issues that are in the public square. She claims that the sanctions negatively impact her ability to engage in national conversations around immigration, DEI, and affirmative action. She has not shown that a suspension would impact her speaking opportunities. Nor has she shown how a suspension would change an outside group's decision to host her as a speaker. She has made public statements about her discipline in numerous public appearances that shape the public's perception of her.[24]

5

Wax also argues she is harmed by the suspension because it will prevent her from teaching for a year. That is not irreparable harm. She will lose half her salary. Her harm is monetary.

Wax also complains of Provost Jackson's directive that she "refrain[] from flagrantly unprofessional and targeted disparagement of any individual or group in the university community." She claims that this directive limits her speech on national issues. The reprimand is limited to comments directed at individuals and groups "in the university community." It does not address speech directed at those outside the university.[25]

Wax seems to be asking us to prohibit Penn from disciplining her in the future. She claims that Penn has threatened her with termination if "she engages in disfavored political speech." She says this "threat" has chilled her speech. Future discipline is not imminent and it is speculative. She has not pointed to any statements by Penn that support her assumption that Penn will discipline her again. Even if she did, we cannot enjoin Penn from disciplining her for possible future infractions.

The publicity already generated in this case may contribute to the public's perception of Wax. However, she has not proven that Penn's sanctions are responsible for that perception or that pausing the suspension would have any impact on it. As we know, she has publicly discussed the sanctions. In short, whatever harm she claims, it is not imminent, irreparable harm. *See e.g., Kamdem-Ouaffo v. Task Mgmt. Inc*, 792 F. App'x 218, 221 (3d Cir. 2019); *Morton*, 822 F.2d at 372; *McBride v. Bell of Pennsylvania*, Civ. A. No. 89-0243, 1989 WL 5343, at *2 (E.D.Pa., Jan. 25, 1989); *Shea v. Mountain View Sch. Dist.*, No. 3:14-CV-01189, 2014 WL 3590006, at *6 (M.D. Pa. July 21, 2014). Her damages, if any, are monetary damages.

6

We reiterate that this is not a First Amendment case. It is a breach of contract case. Wax's efforts to characterize it otherwise are of no avail.

Wax fails to link the sanctions to any clearly defined, non-monetary harm. Because she has not met her burden on the threshold factor of irreparable harm, we need not address the remaining factors in the preliminary injunction analysis. *See Delaware State Sportsman Ass'n, Inc.*, 108 F.4th at 203; s*ee also Reilly v. Harrisburg*, 858 F.3d 173, 179 (3d. Cir. 2017).

## Conclusion

Wax having failed to show irreparable harm, we shall deny her motion for a preliminary injunction.

---

[1] First Am. Compl. ¶ 37, ECF No. 22 ["Compl."].

[2] *Id.* ¶ 38.

[3] *Id.* ¶ 52; Charging Document of Dean Ted Ruger 11, ECF No. 22-1 (attached as Ex. 4 to Compl.).

[4] Charging Document of Dean Ted Ruger 14.

[5] Compl. ¶ 61.

[66] *Id.* ¶ 67. The Hearing was held over a year after the proceedings were initiated because of litigation about board member disqualification and because Penn granted Wax's request to extend some deadlines because of her health. Decision of the President In the Matter of Professor Amy Wax (August 11, 2023) App'x A, ECF No. 22-1 (attached as Ex. 8 to Compl.).

[7] Compl. ¶ 68.

[8] Hearing Board Report 24, ECF No. 22-1 (attached as Ex. 6 to Compl.).

[9] Compl. ¶ 68.

[10] *Id.* ¶ 69.

[11] *Id.* ¶ 75.

[12] *Id.* ¶ 78.

[13] *Id.* ¶ 79.

[14] *Id.* ¶ 79.

[15] *Id.* ¶ 79.

[16] *Id.* ¶ 79.

[17] *Id.* ¶ 80.

---

[18] *Id.* ¶ 81.

[19] *Id.* ¶¶ 77, 82.

[20] *Id.* ¶ 84.

[21] *Id.* ¶ 82.

[22] *Id.* ¶ 82.

[23] The radio station appearance was canceled because of "the harmful nature of Amy Wax's statements" which led to discipline, not the discipline itself. Yale did not attempt to cancel her appearance. A student group at Yale called for her speech to be canceled and cited the sanctions in this request. Yale did not cancel the appearance or speech. *Id.* ¶ 86.

[24] Pl's Opp'n. to Defs' Mot. to Strike Pl.'s Reply Br. 18 n.13, ECF No. 47 (citing Intercollegiate Studies Institute, The Future of Conservatism in America, YouTube (Nov. 2024), https://www.youtube.com/watch?v=2P4HkjNAUNQ (featuring Amy Wax as a speaker; Ricochet.com, Unsafe with Ann Coulter: Amy Wax, YouTube (Dec. 11, 2024), https://www.youtube.com/watch?v=QRDJU6X1GW8 (discussing sanctions); The Harvard Salient, Amy Wax, Jeremy Carl, Garett Jones, Simon Hankinson | Immigration, The Border, & American Identity, YouTube (Feb. 8, 2025), https://www.youtube.com/watch?v=S0EURoS1Ovw (featuring Plaintiff as speaker on panel at Conservative and Republican Student Conference); The Glenn Show (Glenn Loury), A Blow against Free Speech at Penn Law, YouTube (March 2, 2025), https://www.youtube.com/watch?v=-KYLIAr7I9c; Whither the Loonversity (Adam Ellwanger), Dr. Amy Wax, Robert Mundheim Professor of Law, U of Penn, YouTube (March 6, 2025), https://www.youtube.com/watch?v=nyQgx8XiOUU; Thales College, "School Choice: A Vehicle for Constructive and Meaningful Citizenship" from Professor Amy Wax, YouTube (April 9, 2025), https://www.youtube.com/watch?v=udNhSUog2DA (giving keynote address at Liberty & Literacy Forum)).

[25] Wax refers to the "stripping of her title." We assume she is requesting that we order Penn to restore her named chair while the case is pending. She has not shown how she will be harmed in the coming months by not having the title. She has not argued that the loss of the named chair specifically harms her reputation or opportunities. Further, she has been without the named chair for almost a year now.