IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMY WAX** | : | CIVIL ACTION |
| | : | |
| **v.** | : | |
| | : | |
| **THE TRUSTEES OF THE UNIVERSITY** | : | |
| **OF PENNSYLVANIA** | : | |
| | : | NO. 25-269 |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                                  **August 27, 2025**

After she was disciplined for "flagrant unprofessional conduct" based on statements she had made in class and in public that demeaned and denigrated racial minorities, Amy Wax, a tenured professor at University of Pennsylvania Carey School of Law, brought this action against the Board of Trustees of the University of Pennsylvania ("Penn").  She asserts that Penn discriminated against her based on the content of her speech and her status as a White Jewish woman.  She brings federal claims for race discrimination and state law claims for breach of contract and false light invasion of privacy.

As much as Wax would like otherwise, this case is not a First Amendment case.  It is a discrimination case brought under federal antidiscrimination laws.  It calls for us to determine whether offensive comments directed at racial minorities are protected by those laws.

Having considered Penn's motion to dismiss the Amended Complaint for failure to state a cause of action, we conclude Wax has failed to allege facts that show that her race was a factor in the disciplinary process and there is no cause of action under federal antidiscrimination statutes based on the content of her speech.  Thus, we will dismiss the

federal discrimination claims and decline to exercise supplemental jurisdiction over her state law claims.

## Background[1]

Wax began her career at Penn Carey Law School as a tenured professor on July 1, 2001.[2] Five years later, she was named the Robert Mundheim Professor of Law.[3]

In 2017, Wax co-authored an opinion essay in the *Philadelphia Inquirer* lamenting the loss of bourgeois culture while denigrating racial minorities.[4] This instigated student and faculty complaints against Wax for statements she made in the article and later for statements she made in the following years.

On March 2, 2022, Dean Theodore W. Ruger sent Wax a letter charging she had "shown a callous and flagrant disregard for [the] University community" and inviting an informal resolution.[5] The letter cited the following as examples of her conduct:

- When asked by a Black student if she agreed with the claim that Black people are inherently inferior to white people, Wax responded: "You can have two plants that grow under the same conditions, and one will just grow higher than the other."
- Wax asserted on a panel that "our country will be better off with more whites and fewer nonwhites."
- Wax told the New Yorker that "women, on average, are less knowledgeable than men" and "less intellectual than men."
- Wax publicly described Black people as having "different average IQs" than people of other races, such that "Blacks are not going to be evenly distributed throughout all occupations" and that this phenomenon is "not due to racism."
- Wax asserted that "the United States is better off with fewer Asians" and that Asian people lack "thoughtful and audacious individualism."
- Wax told a Black colleague that it is "rational to be afraid of Black men in elevators."
- Wax, speaking on a panel with a gay colleague, asserted that "no one should have to live in a dorm room with a gay roommate," and separately stated that same-sex relationships are selfish and not focused on family or community.
- Wax stated on a podcast that she "often chuckle[s]" at advertisements that show interracial marriages because "[t]hey never show blacks the way they really are: a bunch of single moms with a bunch of guys who float in and out. Kids by different men."

- In an appearance on Tucker Carlson Today, Wax asserted that "Blacks" and other "non-Western groups" harbor "resentment, shame and envy" against Western people for their "outsized achievements and contributions even though, on some level, their country is a shithole."[6]

On June 23, 2022, after attempts at informal resolution had failed, Dean Ruger requested the Chair of the Faculty Senate to convene a Hearing Board. The Chair began assigning faculty members to the Hearing Board in June 2022.[7]

After faculty members were assigned, Wax filed motions to disqualify all members. Before filing the motions, she requested information about the Hearing Board members, including whether they had attended a presentation by Professor Anita L. Allen on February 16, 2022, where the University's speech standards were discussed.[8] Penn denied the request.[9] The composition of the Hearing Board was finalized on September 13 when Wax's motions to disqualify its members were denied.[10]

The Hearing Board conducted a three-day hearing from May 1 to May 3, 2023.[11] On June 21, 2023, the Hearing Board published its report, finding Wax had engaged in "flagrant unprofessional conduct."[12] The Board found that she was in dereliction of her scholarly responsibilities, had violated privacy policies, and had not treated students with equitable due respect.[13] The Board recommended a one-year suspension at half pay, loss of the named chair, loss of summer pay in perpetuity, and a public reprimand.[14]

The Hearing Board sent its report to then-President Liz Magill on June 21, 2023.[15] Magill issued her decision upholding the proposed sanctions on August 11, 2023.[16] On September 24, 2023, Interim President J. Larry Jameson published Magill's decision on Penn's website.[17]

Wax appealed to the Faculty Senate Committee on Academic Freedom and Responsibility ("SCAFR").[18] On May 29, 2024, SCAFR issued its report, finding no procedural defects.[19]

On May 30, 2024, Provost John Jackson sent Wax a draft reprimand, advising her that he would release it later that day.[20] At Wax's request, Interim President Jameson met with her.[21] As a result of that meeting, attorneys for Penn and Wax engaged in settlement negotiations, which ultimately failed.[22]

On September 23, 2024, in accordance with the sanctions, Provost Jackson sent a letter to Wax as a "public reprimand" and notified her that he intended to impose the sanctions recommended by the Hearing Board.[23] Penn published the formal reprimand and publicized the sanctions that same day in its online campus newspaper.[24]

The following day, Jameson published the SCAFR Report on Penn's website.[25] SCAFR member Jules van Binsbergen wrote a dissenting report, arguing that the procedure "did not appropriately protect" Wax's rights.[26]

Penn Carey Law School Dean Sophia Lee advised Wax that Penn was imposing the sanctions, including loss of her named chair, a one-year suspension at half pay with benefits intact, and loss of summer pay in perpetuity.[27] Because Wax had already commenced teaching, including a year-long seminar, for the 2024-2025 academic year, the one-year suspension was delayed until July 1, 2025.[28]

Wax brought this action for race discrimination under Title VI, Title VII and Section 1981 of the Civil Rights Act, and breach of contract and false light invasion of privacy under Pennsylvania law.[29] She withdrew a cause of action under the Americans with Disabilities Act.

4

**Standard of Review**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A conclusory recitation of the elements of a cause of action is not sufficient. *Oakwood Lab'ys LLC v. Thanoo,* 999 F.3d 892, 904 (3d Cir. 2021). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Iqbal*, 556 U.S. at 669, 679). In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the alleged facts make out a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

In deciding a motion to dismiss, courts generally consider only the allegations of the complaint, exhibits attached to the complaint, documents incorporated by reference in the complaint, and matters of public record. *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 134 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1410, 1420, 1426 (3d Cir. 1997)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

Because Dean Ruger's charging document and the Hearing Board's report are attached and integral to Wax's amended complaint, we may consider the exhibits without converting the motion to dismiss to a motion for summary judgment.

## Analysis

*Discrimination – (Counts II, III, V – Section 1981, Title VI, Title VII)*

Wax proffers two theories of race discrimination. First, she claims that she was discriminated against based on the racial content of her speech. She argues she was disciplined for what she said about some races while others who spoke negatively about other races were not disciplined. Essentially, she is asserting a race discrimination claim based on the content of her speech. Second, she alleges that she was disciplined because of her status as a White, Jewish woman.

The anti-discrimination statutes protect speakers, not speech. They forbid discrimination based on the race of the speakers, not the racial content of their speech.

Section 1981 of the Civil Rights Act states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

Title VI states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer— (1) to … discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To support her first theory, Wax claims that Penn punishes some speakers for the racial content of their speech but does not punish other speakers who engage in speech of the same or materially similar content depending on the race of the subject of the speech.[30]  Specifically, she claims that anti-Jewish speech is not subject to discipline while speech directed at other racial groups is.[31]

To make out claims under Section 1981, Title VI, and Title VII, Wax must plausibly allege that she was subjected to intentional discrimination because of her race.  Alleging that one was discriminated against because of one's own protected characteristic (race) is an essential element of a race discrimination claim.  Federal antidiscrimination law does not provide a cause of action for disparate treatment of speech conduct.  In other words, it is the speaker, not the speech, that is protected.

Both parties rely upon *Frith v. Whole Foods Market, Inc. (Frith I)* to support their arguments.  517 F. Supp. 3d 60 (D. Mass. Feb. 5, 2021).  In that case, employees at Whole Foods alleged their employer was discriminating against them by disciplining them for wearing BLM masks while employees wearing apparel with other messages were not disciplined. The district court dismissed the claim, concluding plaintiffs' allegations amounted to content-based speech discrimination, which does not support a Title VII

7

claim. *Frith*, 517 F. Supp. 3d at 71. As the district court pointed out, the Supreme Court had recently "reinforced what the plain language of the statute makes clear: that the proper focus [of a discrimination claim] is on the protected characteristic of the individual employee bringing the claim." *Id.* (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020)).

The First Circuit affirmed with slightly different reasoning. It reiterated that in a discrimination case, "the proper focus is on the protected characteristic of the individual plaintiff." *Frith v. Whole Foods Market, Inc. (Frith II),* 38 F. 4th 263, 271 (1st Cir. 2022) (citing *Bostock*, 590 U.S. at 658). After settling that threshold issue, the appeals court considered whether the plaintiffs had properly pleaded discrimination based on their status as Black employees, their advocacy for Black employees, and their association with Black employees. *Id.* at 273. In its discussion, the court made the statement, relied on by Wax, that "[u]nlike the district court … [plaintiffs] have pleaded discrimination claims that are, conceptually, consistent with Title VII." *Id.* at 274. Wax interprets this statement to mean a Title VII claim can be based on the racial content of speech instead of the race of the speaker.[32] She is wrong.

The *Frith II* court's statement explained that plaintiffs had either pleaded discrimination based on their race as Black employees or their association with Black employees. "Unlike the district court, then, we do not think that appellants have failed to allege that the race of the individual plaintiffs was a motivation for the discrimination … It is clear from the complaint that appellants all fall into one of two categories, Black employees who are subject to racial discrimination and non-Black employees who are subject to racial discrimination [by association]." *Id.* In other words, the plaintiffs had

8

pleaded discrimination based on the race of the speakers, not the racial content of their speech. *Frith* did not hold, as Wax contends, that a Title VII claim need not be based on the plaintiff's own protected characteristic.

Wax misconstrues *Frith II* again when she claims it supports her novel theory for a speech-based discrimination claim. She relies on the *Frith II* court's statement that it did not think "the fact that both Black and non-Black employees were disciplined for wearing Black Lives Matter masks undercuts the discrimination claim."[33] The court elaborated that the plaintiffs had alleged race was a factor because they had pleaded an associational race discrimination claim based on their association with Black people through their messaging. It did not hold that the speech content formed the basis of a discrimination claim under Title VII. *Id.* at 271. Neither do we.

Wax does not allege facts showing that she was discriminated against because she was speaking on behalf of any protected class. She did not associate with any person or persons who were in a protected class. She did not support any protected class. To characterize her comments as supportive of those she criticized and denigrated is not plausible.[34]

Wax's second theory is that her own race as a White, Jewish woman was a motivating factor in Penn's decision to discipline her. She claims that Penn's disciplinary action occurred under circumstances giving rise to an inference of intentional discrimination.[35] She baldly claims that Penn's speech policy[36] "discriminates based on the race or other ground of the speaker,"[37] and that anti-Jewish speech is not subject to discipline.[38] She alleges this policy creates a racially hostile environment and that Penn chose not to punish antisemitic speech or prevent a racially hostile environment, which

9

"contributed to the violation of" her Section 1981 rights.[39] She claims, without any factual support, that her race was a but-for cause of her discipline.[40]

Upon a closer look, her claim that Penn discriminated against her based on her race is based on the same argument she made about the content of her speech. She expressly claims that Penn treats the content of antisemitic speech differently than her speech. Again, she focuses on the content of speech, not the speaker. She defines Penn's speech policy as allowing some races to be criticized and others not. That clearly goes to speech content.

Wax's amended complaint could not be clearer. At paragraph 145, she frames her discrimination claim, stating "Penn's actions against [Professor] Wax were triggered by Professor Wax's speech on affirmative action and other comments involving the topic of race and were intended to punish her for engaging in speech Penn disfavored. At the same time, Penn did not punish any antisemitic speech."[41] So, she alleges, the discipline "was directly caused by Penn's racially discriminatory Speech Policy."[42]

Wax alleges no direct evidence of discrimination based on her race. Neither does she allege any facts about the disciplinary proceedings that raise an inference of discrimination. Her claim of discrimination rests on comparing what she said to what others at Penn said who were not disciplined. In sum, her allegations center on the absence of discipline for speech Wax deems antisemitic as compared to her speech for which she was disciplined.

In the absence of direct evidence, her discrimination claim rests on an inference of racial discrimination based on comparator evidence. To survive a motion to dismiss, "[the plaintiff] must allege facts sufficient to make plausible the existence of ... similarly

10

situated parties." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 375 (E.D. Pa. Oct. 7, 2015) (quoting *Perano v. Twp. of Tilden*, 423 Fed. Appx. 234, 238 (3d Cir. 2011)). A similarly situated party is one whose employment situation is nearly identical to that of the plaintiff, *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013), and who engaged in similar misconduct. *Wilcher v. Postmaster Gen.*, 441 F. Appx 879, 882 (3d Cir. 2011); *Opsatnik v. Norfolk S. Corp.*, 355 F. Appx 220, 223 (3d Cir. 2009).

Penn argues that the persons cited in the Amended Complaint are not comparators. It identifies them as employees in schools other than the law school. This, Penn argues, disqualifies them as comparators.

Penn's comparator argument is not persuasive. The disciplinary policy applies to all university faculty. The handbook is a university policy and dictates the university-wide disciplinary process. The Hearing Board is comprised of faculty from the university applying the same standards to all Penn faculty. Thus, comparators are faculty throughout the university, not only in the law school.

Wax's discrimination claim fails for a different reason. The seven persons she identifies as having been treated differently are not comparators. The content of their speech is not comparable to the speech for which she was sanctioned. They did not speak about race as she did. All but one commented on political issues surrounding the Israeli-Hamas conflict, which she characterizes as antisemitic. She was sanctioned for harmful speech directed at specific demographics in the University. The remarks of her purported comparators were not antisemitic; they were critical of Israel's treatment of Palestinians.

11

The seven persons Wax claims are comparators are: (1) Dwayne Booth, a non-tenured lecturer who posted an allegedly antisemitic cartoon;[43] (2) Ahmad Almallah, a Palestinian poet and artist-in-residence who lectures at Penn and participated in a rally;[44] (3) Julia Alekseyeva, a professor at Penn who posted on social media about the murder of Brian Thompson;[45] (4) Anne Norton, a Penn professor who posted a comment about Hamas and a comment about Jews on social media;[46] (5) Huda Fakhreddine, an associate professor at Penn, who made a statement in support of Hamas and teaches a course that touches on Palestine;[47] (6) Jill Richards, a Penn librarian who made a Facebook post in support of Hamas;[48] and (7) Ibrahim Kobeissi, a Penn Health employee who commented on the Israel/Gaza conflict.[49]

Some of these statements may have been unprofessional and potentially offensive. That is not the issue. Wax must show much more than a potentially offensive statement. She must show that the individuals who made the statements are similarly situated both in terms of the severity of their conduct and their employment conditions. *See Mandel*, 706 F.3d at 170; *Wilcher*, 441 F. Appx at 882; *Opsatnik,* 355 F. Appx at 223.

As is apparent from Wax's allegations and what she did not allege, the purported comparators are not comparators. She did not allege any of them made more than two harmful statements. *See Wilcher*, 441 F. Appx at 882. She did not allege they made statements about the law school or even the wider University community. All of the comments in her complaint had to do with current events. None of the alleged comparators had a pattern of making denigrating and derogatory statements about minorities. Wax also does not identify the race of the alleged comparators, except Almallah, a Palestinian who participated in a rally in support of Palestine. They do not

12

compare to Wax, a tenured law professor with a record of derogatory and discriminatory statements to and about members of the university community, who was given warnings and on whom lesser disciplinary measures were imposed before she was subjected to disciplinary proceedings.[50]

Other than the allegations relating to purported comparators, Wax includes no other factual assertions supporting her claim that she was disciplined because she was White and Jewish. There are no factual allegations in her complaint showing that her race was part of her disciplinary hearing or appeal or that it had anything to do with bringing the charges against her. Without them, her claim that her status as a White, Jewish woman was a cause of her discipline is conclusory. *See Oakwood Lab'ys LLC,* 999 F.3d at 904 (quoting *Iqbal*, 556 U.S. at 669, 679). As she alleges, Penn initiated disciplinary proceedings against her because of the content of her speech,[51] not her race. Having failed to allege facts from which one could reasonably infer that she was treated differently than other faculty members on the basis of her race, the claim that she was discriminated against is an unsupported conclusion.

In sum, her allegations, accepted as true, do not pass the plausibility test. Conclusory statements are not substitutes for facts. Subjective beliefs are not facts.

Wax now asserts an associational discrimination claim when she asks us to read her comments disparaging Black students as a statement on behalf of a protected class, – racial groups harmed by Penn's affirmative action policies – for which she is being discriminated against.[52] This is not a plausible interpretation of her comments. Nothing in the disciplinary process or her comments leads to the conclusion that she was penalized for associating with a protected class. Her comments were not advocacy for

13

protected classes. They were negative and directed at protected classes. Criticizing minorities does not equate to advocacy for them or for White people. Her claim that criticism of minorities was a form of advocating for them is implausible.

Wax has not stated a plausible cause of action that she was discriminated against based on her race. Therefore, we will grant Penn's motion to dismiss Wax's discrimination claims under Section 1981, Title VII, and Title VI.

### State Law Claims

"Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); 28 U.S.C. § 1367(c)(3).

Contrary to Wax's assertion,[53] there is no federal issue implicated here.[54] Having dismissed her federal claims, we decline to exercise supplemental jurisdiction over the state law breach of contract and false light invasion of privacy claims.

Where the complaint does not withstand a 12(b)(6) motion, a curative amendment must be allowed unless amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d. Cir. 2004). An amendment is futile if the proposed amendment would still fail to state a claim upon which relief can be granted. *Shane v. Fauver*, 213 F.3d 113,115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). There is nothing Wax can add that would make her discrimination

claims plausible.  Thus, because amendment would be futile, Wax will not be given leave to amend her complaint once again.

---

[1] The facts are recited from the allegations in the Amended Complaint. We accept them as true and draw all reasonable inferences from them in favor of Wax.  We also consider documents attached to the Amended Complaint.

[2] Am. Compl. ¶ 37, ECF No. 22 ["Compl."].

[3] *Id.* ¶ 38.

[4] *Id.* ¶ 39.

[5] *Id.* ¶ 52; Charging Document of Dean Ruger 11, ECF No. 22-1 (attached as Ex. 4 to Compl.).

[6] Charging Document of Dean Ruger.

[7] Compl. ¶ 61.

[8] *Id.* ¶ 63.

[9] *Id.* ¶ 65.

[10] *Id.* ¶ 66.

[11] *Id.* ¶ 67.  At oral argument, plaintiff's counsel could not say what reasons were given in her motions.

[12] Hearing Board Report, ECF No. 22-1 (attached as Ex. 6 to Compl.).

[13] *Id.*

[14] Compl. ¶ 68.

[15] *Id.* ¶ 69.

[16] *Id.* ¶ 75.

[17] *Id.* ¶ 77.

[18] *Id.* ¶ 78.

[19] *Id.* ¶ 79.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* ¶ 80.

[24] *Id.* ¶ 81.

[25] *Id.* ¶ 82.

[26] *Id.* ¶ 84.

[27] *Id.* ¶ 82.

[28] *Id.*

[29] She also brought a claim under the ADA for failure to reasonably accommodate.  She voluntarily dismissed that claim.  25-cv-269, Plaintiff's Notice of Voluntary Dismissal with Prejudice as to Certain Claim (ECF No. 30), March 20, 2025.

---

[30] *Id.* ¶ 136.

[31] *Id.* ¶ 138.

[32] Pl.'s Br. at 26.

[33] *Id.*

[34] Some of the comments are set forth in the charging letter attached as Ex. 4 to the Amended Complaint.

[35] Compl. ¶¶ 133, 154, 176.

[36] *Id.* ¶ 7.  Wax alleges Penn has a "Speech Policy."  She defines the policy as a collection of policies that provide that "some races may not be criticized while other racial or ethnic groups can be – and routinely are – subjected to virulently racist speech without consequence." *Id.*  She has not pointed to any written or official "Speech Policy" at Penn, much less one that condones discrimination, despite her attempts to turn her conclusory assertion into a factual allegation by presenting it as such.

[37] *Id.* ¶ 137.

[38] *Id.* ¶ 138.  Her complaint states that anti-Jewish speech is not subject to the same discipline under the Speech Policy as speech alleged to target other racial groups.  She does not include other examples of "speech alleged to target other racial groups."  The only example of speech about racial groups other than Jews is her own.

[39] *Id.* ¶¶ 139, 141-42.

[40] *Id.* ¶ 146.

[41] *Id.* ¶ 145.

[42] *Id.* ¶ 147.

[43] *Id.* ¶¶ 9-10.

[44] *Id.* ¶ 17.

[45] *Id.* ¶ 20.

[46] *Id.* ¶ 90.

[47] *Id.* ¶¶ 94-95.

[48] *Id.* ¶ 101.

[49] *Id.* ¶ 102.

She also points to an "encampment" of protestors at Penn.  It is unclear how an encampment of unnamed individuals holding a protest are comparators to Wax.  Regardless, she concedes that 33 protestors were arrested and the encampment was disbanded, *id.* ¶¶ 88-89, casting doubt on her assertion that the alleged comparators in the group were not disciplined.  She lists as a comparator a "crowd of Penn faculty and students [who] gathered to call for an attack against Tel Aviv." *Id.* ¶ 104.  We likewise decline to give comparator weight to an undefined crowd.  Therefore, we will confine our analysis to the seven individuals named in Wax's complaint.

[50] *See* Charging Document of Dean Ruger.

[51] Compl. ¶ 2.

[52] Pl. Br. at 29.

[53] Compl. ¶ 33.

[54] At oral argument, plaintiff's counsel acknowledged that they cannot bring a First Amendment claim.  Oral Argument Tr., June 16, 2025, 7:20-21.